28740.   LAKE *et al. v.* CAMERON.

DECIDED MARCH 17, 1941.

*John H. Hudson, C. R. Wheeless,* for plaintiffs in error.
*George & John L. Westmoreland,* contra.

STEPHENS, P. J.   Mrs. Florence Cameron instituted suit for personal injuries against Virgil H. Lake, H. E. Stanford, and J. W. Stanford, which injuries, she alleged, resulted from the negligence of the defendants in the maintenance of certain premises owned, occupied, and controlled by them, and upon which premises the plaintiff came as their customer and invitee.   J. W. Stanford was stricken as a defendant.   It appeared from the allegations of the petition, that the defendants were chiropractors, and maintained in the City of Atlanta a building where their patients received treatment from them; that the plaintiff was a patient of the defendants, and on the occasion in question she came to their building for the purpose of attending a class of patients to which she belonged, which class received from the defendants periodic treatments; that while on the premises of the defendants for the above purpose, the plaintiff fell into the basement; that the defendants had failed in the duty owed to her of keeping safe the premises and approaches thereto, and that by reason thereof, without fault on her part, she fell and was hurt; that the defendants were negligent in maintaining upon these premises an unguarded doorway, with no warning sign thereon, leading into the basement; that there was no light at such place that would enable her to ascertain the danger; that the defendants, in the exercise of the duty imposed upon them, should have had a light at this place; that when she opened this door, and there was no light there, and the hallway was dark, she groped for a light switch, being under the impression that she was on the

threshold of the dressing room, which was adjacent to the door leading into the basement, and that while so doing she fell down these steps into the basement. It appeared from the allegations of the petition that, although the nurse or female attendant of the defendants who was on duty at the premises when the plaintiff arrived for the purpose of taking treatment, knew of the doorway leading into the basement and that it was adjacent to the dressing-room doorway, she permitted the plaintiff, knowing that she was seeking the dressing-room, to open this door. It also appeared that the patients of the defendants who attended this class had to prepare for the class treatment by undressing and putting on smocks; that the defendants furnished each patient with an individual smock; and that on the occasion in question the plaintiff had requested the smock to be used by her from the female attendant or nurse of the defendants who was on duty, and when the smock was given to the plaintiff she proceeded toward the dressing-room to change from her clothes into the smock. The defendants denied liability. They alleged that the plaintiff fell as the result of her failure to exercise due care for her own safety. The jury returned a verdict for the plaintiff for $637.50. The defendants moved for a new trial on the general grounds only. This motion was overruled, and the defendants excepted.

The plaintiff testified, in part, as follows: "As I went into the entrance way on July 3, 1935, they had a young lady attendant there at the front door—they always had a young lady attendant there at the front door. I had a discussion with her. She had a desk and 'phone back of her; she has this cabinet with smocks for the different patients. A 'smock' is a loose garment that the patient wore when taking their treatments—each patient had an individual smock to wear. I would say this cabinet had about twenty compartments in it, or something like that. There were rows of drawers there with names on them. On this particular occasion on July 3rd they had designated one of those containers for my smock, and had my name on the drawer containing it. Prior to July 3rd, 1935, I had been there several times. As to where I went the other times that I had come in there before, well, the first treatment I took on the right in Dr. Stanford's office, I believe; and then the next treatment the girl at the desk showed me the dressing-room, which was on the left, that was a different room, and then I went

to this room at the left several times. The room on the left was just through this very narrow hall—narrow hallway. You passed this one door to the basement, and then this door to the dressing-room, which was just about five feet from the attendant. The first door was practically right next to the door that went into the dressing-room. On July 3, 1935, I had no idea in the world where the first door led to; it was never called to my attention. I had never noticed it before. I had not particularly noticed that there was a door that I passed to go to the dressing-room. There were doors on all sides there. On this particular occasion that I went in July 3, 1935, I got there a little after five o'clock; I would say along about probably 5:30 may be. It was still daylight outside. There are doors entering those offices that go off to the right from this hallway. They were solid wood doors. I didn't see any light in that hallway. I asked the attendant for my smock at the desk; and I was a little early—somewhat early for the next class; and I asked her if it would be all right to go ahead and undress. She said it would be all right. She gave me a smock. When I started back to go to what I thought was the dressing-room, I stopped there in the narrow hallway, and I stood before this door, and it was a little dark, and I asked her again, 'Is it all right to go in?' and she said, 'Yes, it is all right.' Well, I opened this door, and it was dark in this room, and I thought probably the lights hadn't been turned on yet, because it was early for the next class, so I was trying to find the light switch, and I—well, on the side of the wall inside, and I stepped in to get the light switch, and the next thing I just fell down. It is very steep steps that leads down into the basement, about twenty-foot length, I would say. They are basement steps, wooden steps. I would say very steep, and not so even, just made out of wood. The length of the stairway is about twenty feet, I would think. I don't know just exactly how many steps that is. Step right straight down, just the minute that you step in; there is no landing at the first. There is a landing away down at the bottom there. I had never been in that door before. I don't want to see it. I was never told anything about that. I had no idea there was anything down there like that. I thought I was going into the ladies' dressing-room. I was not intending to go anywhere else other than in the ladies' dressing-room. There was no sign on the door whatever. A couple of days after the accident they put a lit-

tle sign up, a little handmade sign, but at the time of the accident and the times that I had gone prior to that time there was no sign on the door. There was not any such thing as this gate across that doorway. That was not up at the time. I have never seen anything like this around that door; that was not up at the time; so help me God, there was nothing like that. There was not anything like this put up there within the next two months after that. There was a little catch there in the dark, and I saw this little light catch, and I thought that it was early for the class, and it just unclasped there, right there by the knob, and I just unclasped it and pushed the door. The door was shut; yes. I didn't know there was any steps down to the basement, and I didn't know anything about that part of the house. This attendant did not go with me back to the dressing-room on this occasion on July 3, 1935. Nobody didn't go back there with me, not on that occasion. I didn't see any one at the time, except the attendant; but after I fell and came up, there was several people came out to see; so I don't know where they were at the time. How did I fall? Well, I just—I don't know just what happened. I just went right down in the space there, and struck one side there, and rolled down, or fell down, and right there at the landing there is a brick pillar or something, I fell right there at that, at the bottom of these steps. I didn't know what to cling to. I didn't know what I was in; didn't know what had happened. I was in a lump down there at the landing, and I had my foot under me, and my head over to one side, and I didn't know how badly I was hurt at the time. I was stunned. I was stunned when I fell. I had gotten bruises all over my body, and I had just rolled right down and knocked against things going down, and I don't know what. I was bruised, just all over. I don't know just what part of my body, I could not say, was not bruised hardly. I just fell right down all over. I was bruised and scraped up all over; not any big gashes, but just bruised and scraped all over."

The defendants introduced evidence in denial of the testimony of the plaintiff. The sole propositions urged in this court by the defendants are (1) that the plaintiff fell as a result of her negligence and failure to exercise proper care for her safety, and (2) that the plaintiff was not injured as a result of the fall. "Where the owner or occupier of land, by express or implied invitation, induces or

leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries occasioned by his failure to exercise ordinary care in keeping the premises and approaches safe." Code, § 105-401. The plaintiff brings her case under the principle of law embodied in this section of the Code. That she was an invitee upon the premises of the defendants at the time she fell is not disputed. Where a person maintains a place of business at which he sells goods or dispenses services to those who comply with his requirements as to compensation therefor, such person owes a duty to those coming to the premises to trade with him of using the care and caution necessary to keep the premises and approaches thereto in a safe condition. It is ordinarily a question of fact for a jury whether an owner or occupier of premises has exercised the proper care and diligence in keeping the premises safe for those invited thereon. The defendants owed to the plaintiff the duty of maintaining the premises, to which she was invited to receive treatment from them, in a reasonably safe condition, and the plaintiff had a right to rely upon the performance by the defendants of this duty toward her.

The jury were authorized to find that the door leading to the basement was adjacent to a similarly appearing door which led into the dressing-room, and that this door did not have any placard or sign thereon indicating that it was not the door leading to the dressing-room, or that it was a door leading into the basement. It does not appear that the plaintiff knew that this particular door led to the basement. The servant of the defendants in charge of delivering to the patients the smocks to be put on by them when receiving treatments knew which door led into the basement and which door led to the dressing-room. The jury were authorized to find that the plaintiff requested the smock belonging to her from the servant of the defendants, and asked her if it would be all right to go ahead and undress and put the smock on, as she was a little early for the treatment; that when she started and got to what she thought was the dressing-room she stopped in the narrow hallway and stood before this door leading into the basement; that it was "a little dark" in the hallway; that the plaintiff asked this servant "Is it all right to go in?" and the servant replied, "Yes, it is all right;" and that the plaintiff opened this door, and as it was dark she groped for the light switch, thinking she was in the dressing-room, and fell down

the steps into the basement. The jury were authorized to infer from the evidence that when the plaintiff asked this servant if it was all right for her to go in she was in sight of this servant and in front of the door leading into the basement, which was not barred, and that this servant knew that this door led into the basement, that it was not barred, and that it was not lighted, and should have informed the plaintiff that this was not the door leading into the dressing-room.

A master is liable for the negligence of his servant committed within the scope of his employment and in the furtherance of his master's work, and it appears that this servant was in charge of the smocks and on duty at the place where the patients of the defendants procured their smocks and went into the dressing-room for the purpose of putting them on, and when she told the plaintiff that it was all right to go in she was in the performance of her duties. The jury were authorized to find that this servant was negligent in permitting the plaintiff to open this doorway into the basement, and in specifically directing her or telling her that it was all right to go in that door; and that the defendants were chargeable with such negligence.

The defendants contend that the plaintiff fell as the result of her own negligence and failure upon her part to exercise proper care for her safety. The evidence did not demand this finding. While it showed that the plaintiff had been to the premises of the defendants before, it did not appear as a matter of law that she was negligent, under the circumstances, in opening the door going into the basement. The evidence authorized a finding that the door was not barred, and did not have a sign on or near it to inform the plaintiff that it was a door into the basement, and that the hallway was dark, and there was no light over the steps leading into the basement to inform the plaintiff, after she opened the door, that she was not in the dressing-room. It does not appear as a matter of law that the plaintiff knew that this was the door leading into the basement, and having been directed or told that it was all right to go in this door by the defendants' servant, and this door being adjacent to the door leading into the dressing-room, this court will not hold the evidence demanded as a matter of law a finding that the plaintiff failed to exercise ordinary care for her own safety and was negligent in opening this door and groping for the light, which caused her to fall into the basement.

The defendants urge that the plaintiff was not injured as a result of the fall, and therefore that the verdict in her favor for $637.50 was not authorized by the evidence. The jury were authorized to find, from the plaintiff's evidence alone, that she was hurt by the fall and suffered pain therefrom. The plaintiff made no claim for permanent injuries or loss of time, and she did not seek to recover any medical expenses. The jury were authorized to find that when the plaintiff fell she was badly shaken and bruised, and suffered cuts, scrapes, and lacerations "all over" her body. The verdict was not a large one, and was not entirely without evidence to support it. It follows that the judge did not err in overruling the motion for new trial. *Judgment affirmed. Sutton and Felton, JJ., concur.*