**Clyde L. MOODY, Plaintiff,**

v.

**SEARS, ROEBUCK & COMPANY,**
**Defendant.**

**Civ. A. No. 965.**

United States District Court,
S. D. Georgia,
Brunswick Division.

March 25, 1971.

Anthony A. Alaimo, Alaimo & Taylor, Brunswick, Ga., for plaintiff.

Walter C. Hartridge, II, Bouhan, Williams & Levy, Savannah, Ga., for defendant.

### ORDER DENYING SUMMARY JUDGMENT

LAWRENCE, Chief Judge.

In 1964 Gilbert Baxley ordered a 24-foot aluminum extension ladder from Sears, Roebuck & Company which he had seen advertised. It was delivered and paid for a few days later. During the next three years it was used on his farm in Appling County. The plaintiff, who was Baxley's son-in-law, was a sharecropper and lived on the farm. On July 23, 1967, Moody climbed the ladder to inspect some tobacco that was being cured in a tobacco barn. He looked through the window and, in his words, "taken one step back down, and that was when the pop occurred. It popped like a twenty-two rifle shot. Now the next thing I knowed, I was laying on the ground with my leg up in part of the ladder, and they was trying to get me out." Deposition, p. 16. The side rail had broken. So had plaintiff's ankle.

Moody sued Sears for damages in 1969. The complaint is based on negligence and breach of warranty. Defendant moves for summary judgment, contending (a) that the warranty action is barred by the limitations period of Article Two of the Commercial Code and (b)

that no action lies for negligence since Sears did not manufacture the ladder but was a mere retailer and the alleged defect was not reasonably discoverable on inspection.

■ The implied warranty count (there was no express warranty) is clearly barred by the lapse of time between the alleged breach (1964) and the filing of the suit (1969). Such an action must be commenced within four years from the breach irrespective of the aggrieved party's lack of knowledge and the breach occurs upon tender of delivery. Code of Georgia § 109A–2–725.

Count 2 of the complaint is dismissed.

The negligence count is not barred by the statute of limitations since the suit was brought by plaintiff within two years after he was injured. Sears argues that its status was that of a retailer. The ladder was manufactured by White Metal Rolling Company. The defect was a latent one. As to the liability of a retailer in such cases see King Hardware Company v. Ennis, 39 Ga. App. 355, 147 S.E. 119, and Maddox Coffee Company v. Collins, 46 Ga.App. 220, 167 S.E. 306.

I must agree that Sears should not be expected to detect what the purchaser did not discover until the rail broke. If this were the whole story, its denouement would be quite predictable. But the showing of Sears on its motion does not reveal what came out at the argument. The name of the manufacturer did not appear on the ladder. Sears' trade-name, "Craftsman," did. There was nothing connected with the sale to show that anyone but the defendant was involved.

■ The weight of decisional law as well as legal commentary is that where a retailer is not a mere conduit but represents itself to be the manufacturer and holds out the product as its own it must be treated as a manufacturer and is subject to the same liability. Fruman and Friedman, Products Liability §§ 18.01 [1]; 22.1 [2]; Restatement of the Law of Torts, 2d § 400; 65 C.J.S. Negligence § 100(3)b; Mobberly v. Sears, Roebuck & Co., 40 Ohio App.2d 126, 211 N.E.2d 839; Carney v. Sears, Roebuck & Co., 4 Cir., 309 F.2d 300; Smith v. Regina Manufacturing Corporation and Sears, Roebuck and Company, 4 Cir., 396 F.2d 826.

In *Carney, supra,* the Fourth Circuit, dealing with Virginia law, said that the basis of the rule is that "where the vendor puts only its name upon the product without indicating that it is actually the product of another then the public is induced by its reasonable belief that it is the product of the vendor to rely upon the skill of the vendor and not the skill of any other." In Smith v. Regina, *supra,* the same Court dealt with South Carolina law as applied to an electric floor polish-scrubber sold by Sears under its Kenmore trade-name. In holding that the defendant assumed the responsibility of a manufacturer the court stated that while the rule had not been adopted *per se* in South Carolina "the pronouncements on products liability emanating from the highest court of that state clearly demonstrate a desire to protect consumers and correspondingly to impose stringent duties on sellers."

Counsel for defendant relies on Purkey v. Sears, Roebuck & Company, 220 F.2d 700, a Georgia case which was decided by the Fifth Circuit in 1955. A child was severely injured when a lawn mower sold by Sears threw a piece of concrete that was lying in the grass. The mower was not manufactured by defendant but was sold under its "Craftsman" label. In affirming the direction of a verdict in favor of Sears the Fifth Circuit said that defendant was not the manufacturer and that there was no privity. It did not deal with the trade-name issue. Under the circumstances, I decline to follow *Purkey.*

The past fifteen years has seen continued assaults and massive breaches in the walls of the products liability citadel. The decisions of the courts of this State and legislation evince the purpose of affording broader protection to con-

sumers and stricter standards as to manufacturers. It is true that Georgia has not adopted the strict liability theory. In 1968 the General Assembly of this State enacted legislation which originally seems to have had such an object. However, the statute apparently falls short of eliminating negligence as a requisite to a tort action against a manufacturer.[1] The present case arose before the Act of 1968 and after the repeal of the 1957 statute (Code of Georgia § 96–307) which provided that where personal property is sold as new manufacturers warrant to an ultimate consumer that the article is reasonably suited to the use intended.[2] We are in an area of law uncontrolled by any Georgia statute. The courts of this State, however, have long recognized that manufacturers are liable in tort for the sale of a defective article likely to be used by other people than the buyer. Washburn Storage Company v. General Motors Corporation, 90 Ga.App. 380, 83 S.E.2d 26; Simmons Co. v. Hardin, 75 Ga.App. 420, 427, 43 S.E.2d 553. While no case explicitly holds that a retailer is subject to the same liability as a manufacturer when it uses its own trade-name in marketing an article the modern trend in products liability cases as well as a 1921 decision by the Court of Appeals of this State supports the prediction that given the facts of this case it would so hold. In Fleetwood v. Swift & Company, 27 Ga.App. 502, 108 S.E. 909, defendant sold a package of "Brookfield Creamery Butter" which did not show that it was the manufacturer but which recited on the label that the product was sold in the United States by Swift as distributors. The Court of Appeals said, "If under the evidence, it could be taken as shown that the defendant, over its name, had impressed the package with its own individual trade or

proprietary brand, this would be equivalent to vouching for the product as its own."

 I hold that the use of the Craftsman trade-name on a product supplied to Sears by an anonymous manufacturer subjects it to suit in tort on the same basis as the manufacturer and its liability is not to be adjudged by legal standards applicable to retailers. The motion of defendant for summary judgment is overruled as to the negligence count.

---

1. E. Hunter Taylor, Jr., "Georgia's New Statutory Liability for Manufacturers: An Inadequate Legislative Response, 2 Georgia Law Review," 562f.; Whitaker v. Harvell-Kilgore Corporation, 5 Cir., 418 F.2d 1010, 1018; Friend v. General Motors Corporation, 118 Ga.App. 763, 768, 165 S.E.2d 734; Reddick v. White Consolidated Industries, Inc., D.C. 295 F. Supp. 243.

2. This legislation was repealed upon adoption of the Uniform Commercial Code in 1962.