### 72122. CARLO v. AMERICANA HEALTHCARE CORPORATION.
(347 SE2d 282)

CARLEY, Judge.

Appellant brought suit to recover damages for personal injuries that she sustained while a patient in appellee's nursing home facility. The following facts are not in dispute: On the date in question, appellant was walking down a hallway in the nursing home. Another patient was simultaneously attempting to enter the hallway by a door from an adjacent rest room. The door opened outward into the hallway rather than inward into the rest room itself. When the rest room door was thrown open, appellant was struck by it and knocked to the floor. On these facts, appellant's complaint alleged that appellee had been negligent, in that it maintained a rest room door which opened out into a hallway and, thus, directly into the path of passing nursing home patients. By way of defense, appellee asserted that certain Department of Human Resources Rules and Regulations required that the rest room door open outward into the corridor and that, having complied with the regulations, it had not been negligent as a matter of law.

On consideration of appellee's motion for summary judgment, the trial court found that the rest room door had been maintained in compliance with State regulations. Finding no genuine issue of mate-

rial fact, the trial court granted appellee's motion for summary judgment. Appellant appeals, urging that the State regulations afford no basis for the grant of summary judgment.

1. Chapter 290-5-8 of the Department of Human Resources Rules & Regulations deals with "Nursing Homes." Appellee relies on Rule 290-5-8-.18 (29) (i), which provides: "When a door swings out on any platform, balcony or porch or terrace, the minimum width of the platform, balcony, porch or terrace shall be thirty (30) inches plus the width of the door, measured at right angles to the wall containing the door. *Exit doors, other than for living units, shall swing in the direction of exit from the structure.*" (Emphasis supplied.) Apparently, neither "exit door" nor "living unit" is otherwise specifically defined anywhere in the regulations. However, appellee urges that, insofar as the door in question provides the only means of egress from the rest room, it must be an "exit door" within the meaning of the regulation. Therefore, according to appellee, the door must conform to the regulations by swinging out into the hallway, since that is "in the direction of exit from the structure."

Under such a definition as appellee advances, any and all doors which provided access to, as well as egress, from otherwise enclosed areas would be considered "exit doors." To give "exit doors" such a broad definition would appear to be contrary to the " 'well-recognized rule of construction that when a statute or document enumerates by names several particular things, and concludes with a general term of enlargement, this latter term is to be construed as being ejusdem generis with the things specifically named, unless, of course, there is something to show that a wider sense was intended. [Cits.]' [Cit.]" *Hamlin v. Timberlake Grocery Co.*, 130 Ga. App. 648, 650 (1) (204 SE2d 442) (1974). From the specific context in which it appears, the term "exit doors" is seemingly intended to refer only to such doors as provide direct egress from the interior of the building to the outside, as for example "out on any platform, balcony or porch or terrace." Having such doorways as lead directly to the outside "swing in the direction of exit from the structure" would facilitate a rapid and orderly evacuation of the premises: Departure would not be delayed by the need to *pull* the doorway inward, which would be against the outflow of traffic, but evacuating patients could continue toward the safety of the outside without interruption by merely *pushing* the doorway in that direction. Moreover, this interpretation of the meaning of "exit door" is apparently not inconsistent with such other regulations as employ the term "exit," as for example, Rule 290-5-8-.18 (21): "There shall be at least one building *exit* at ground level and at least one building *exit* shall be provided with a suitable ramp designed for a stretcher and a wheelchair. There shall be one such *exit* leading to the outdoor recreation area." (Emphasis supplied.)

Under this narrower definition, an internal door giving access to and from a hallway and an otherwise enclosed area, such as a rest room, could *not* be considered an "exit door." The purpose of such a door would primarily be to provide *access for* the limited use of the enclosed facilities, not to provide *exit from* the building itself.

However, even assuming that appellee's interpretation is correct and that the bathroom door was an "exit door," all that would be shown thereby is that appellee complied with a regulation which required that the door "swing in the direction of exit from the structure . . . ." This, without more, would not necessarily show that appellee was *not* negligent in also maintaining that door so that it would swing directly into the path of nursing home patients who were attempting to walk down the corridor. "The fact that the defendant ha[s] complied with all the regulations prescribed by the . . . authorities would not relieve it of liability if it ha[s] been in fact negligent. The question as to whether the defendant ha[s] used ordinary care and diligence [is generally] one for the jury. While the nature of the . . . regulations and the defendant's compliance with them may [be] of assistance to the jury in solving this question, the finding might properly [be] that, although the defendant complied fully with all the . . . regulations, it was still negligent. The defendant owed to the plaintiff the duty of a certain degree of care to avoid damaging her, and that degree of care would not be lessened or changed by any regulations . . . given by the . . . authorities." *Central of Ga. R. Co. v. Bernstein,* 113 Ga. 175, 179 (4) (38 SE 394) (1901). See also *Johnson v. Fowler Elec. Co.,* 157 Ga. App. 319, 323-324 (277 SE2d 312) (1981).

With regard to this question of *where* doors may swing outward rather than *which* doors must do so, the regulations themselves generally provide that "[a]ll buildings and equipment shall be maintained in such condition that no hazards to the life and safety of the patients exist." Rule 290-5-8-.13 (1). With specific regard to corridors, the regulations provide: "Corridors in areas used by patients shall not be less than eight (8) feet in clean width. Handrails may project into corridors, but drinking fountains, desk[s] or *other projections or obstructions* may *not* reduce the eight (8) foot minimum dimension. . . ." (Emphasis supplied.) Rule 290-5-8-.18 (j). Thus, even assuming without deciding that the bathroom doorway might otherwise evince literal compliance with regulations regarding the direction in which it opened, it also appears that other regulations mandate an unobstructed 8-foot wide corridor "in areas used by patients. . . ." Appellee advances no reason why this regulation is *not* intended to provide nursing home patients with unobstructed corridors and, if so, why its doorway would *not* be a "projection" into or an "obstruction" of the corridor in *violation* of this specific regulation. Compare *Truett v. Morgan,* 153 Ga. App. 778 (266 SE2d 557) (1980).

Moreover, even if the theory of negligence per se is not otherwise available to appellant, " '[w]hat is the precise legal intent of the term "ordinary care" must, in the nature of things, depend upon the circumstances of each individual case. It is a relative and not an absolute term.' [Cits.]" *Otis Elevator Co. v. Rogers*, 33 Ga. App. 181, 188 (125 SE 763) (1924). On the record before us, we cannot hold that, as a matter of law, a jury would not be authorized to find that it was an act of negligence to maintain a door which opens directly out into the *corridor* of a *nursing home* so as to cause the *fall* of a passing patient. Compare *Whitehead v. Southern Bell Tel. &c. Co.*, 37 Ga. App. 775 (141 SE 922) (1927); *Truett v. Morgan*, supra. "It is ordinarily a question of fact for a jury whether an owner or occupier of premises has exercised the proper care and diligence in keeping the premises safe for those invited thereon. [Appellee] owed to [appellant] the duty of maintaining the premises, to which she was invited to receive treatment . . . , in a reasonably safe condition, and [appellant] had a right to rely upon the performance by [appellee] of this duty toward her." *Lake v. Cameron*, 64 Ga. App. 501, 505 (13 SE2d 856) (1941).

2. It appears that Rule 290-5-8-.18 (29) (i) was the only basis for the trial court's decision to grant summary judgment. Our own review of the record reveals no other basis to support such a ruling in favor of appellee. Although appellant may have been aware that she was about to pass a closed door, there is no evidence that appellant had equal knowledge of the danger that the doorway created for those using the corridor. The door itself was not a static dangerous condition but only became dangerous to those in the corridor when activated by one inside the rest room opening the door. There is no evidence that, from past experience or warning, appellant knew or had reason to know that the rest room door might, at any time, be thrown open into her path. "[A]n analysis of the parties' relative degrees of knowledge and the proprietor's corresponding duty to warn the plaintiff is meaningless where it is clear that whatever the invitee may have 'known' about the dangerous situation, he was unaware of its dangerous consequences or could not exercise any control over those consequences." *Clark v. Carla Gay Dress Co.*, 178 Ga. App. 157, 160 (342 SE2d 468) (1986). Moreover, even assuming arguendo that the evidence did show appellant's equal knowledge, this would not necessarily "bar [her] recovery. Where the plaintiff admits [s]he knew of the dangerous situation but was injured while using ordinary care to avoid it, [s]he is not barred from recovery, for obviously the peril was one [s]he could not with ordinary care escape. [Cits.]" *Clark v. Carla Gay Dress Co.*, supra at 160. Even if appellant knew of the door, there is no evidence that, in the normal course of her routine as an ambulatory resident of the nursing home, she could or should have avoided passing it. See generally *Grier v. Jeffco Mgt. Co.*, 176 Ga. App. 158 (335 SE2d 408)

(1985); *Hull v. Mass. Mut. Life Ins. Co.*, 142 Ga. App. 269 (235 SE2d 601) (1977). Therefore, the judgment of the trial court is reversed.

*Judgment reversed. McMurray, P. J., and Pope, J., concur.*

DECIDED JUNE 18, 1986 —
REHEARING DENIED JULY 8, 1986.

*Warren W. Hoffman*, for appellant.

*Alan L. Newman, Cynthia B. Smith, Arnold Wright, Jr.*, for appellee.