Tamara **MORGAN**, Plaintiff,

v.

**SEARS, ROEBUCK AND COMPANY**, Defendant.

Civ. A. No. 1:86–CV–2561–JOF.

United States District Court,
N.D. Georgia,
Atlanta Division.

July 28, 1988.

As Amended Jan. 6, 1989.

Alan F. Herman, Freeman & Hawkins, Faye Dara Levine, Rand & Ezor, Atlanta, Ga., Sheryl Deane Fambrough, Fambrough & Shapiro, Chamblee, Ga., for plaintiff.

Ronald Louis Reid, Donna Potts Bergeson, Alston & Bird, Atlanta, Ga., for defendant.

## ORDER

FORRESTER, District Judge.

This products liability action is before the court on the defendant's motion for summary judgment and on the defendant's motion to strike several of the plaintiff's affidavits submitted in opposition to the defendant's motion for summary judgment. For the reasons discussed below, both of

the defendant's motions will be denied. After a brief discussion of the facts and the plaintiff's claims, the court will deal with the defendant's motions in turn.

### I. FACTS

The plaintiff was born on January 3, 1967. On May 3, 1970 the plaintiff sustained serious injuries when the garment she was wearing caught fire while she was playing with matches. The plaintiff contends that the garment she was wearing at the time was a nightgown identified as item number 29K3111F advertised by Sears in its spring through summer 1968 catalogue. As will be discussed more fully below, the defendant disputes the plaintiff's identification evidence.

The plaintiff filed this suit in October 1986, alleging that the defendant is strictly liable because the gown was not merchantable and reasonably suited to the use intended as required by O.C.G.A. § 51–1–11 (Count I). The plaintiff also alleged that the defendant was liable for its negligence in, *inter alia,* failing to warn of the garment's flammability, failing to treat the gown to make it flame resistant, and failing to use a flame resistant fabric (Count II). Finally, the plaintiff alleged that the defendant had breached its implied warranty under O.C.G.A. § 11–2–301, *et seq.* (Count III). In November 1987 the court allowed the plaintiff to amend her complaint to assert a fourth count alleging that Sears knew the flammability characteristics of the gown and failed to warn the plaintiff or her mother (Count IV). The amendment also added a prayer for punitive damages.

### II. MOTION TO STRIKE

The defendant has filed a motion to strike the affidavits submitted by the plaintiff in opposition to the defendant's summary judgment motion. The defendant objects to the affidavits of Betty Morgan, Tonya Morgan Henry, Lena Marquette and Michael Scalone because they are not based on personal knowledge. Further, the defendant contends Betty Morgan's and Tonya Henry Morgan's statements contradict certain statements given in their depositions. The defendant objects to Lena Marquette's and Michael Scalone's statements as inadmissable hearsay. The defendant also objects to Dr. Johnson's statements on the basis that he is not qualified as an expert in the area in which he is attempting to testify.

 Rather than filing a motion to strike as under Rule 12, the proper method for challenging the admissibility of evidence in an affidavit is to file a notice of objection to the challenged testimony. *Pinkerton and Laws Company, Inc. v. Roadway Express, Inc.,* 650 F.Supp. 1138, 1140 (N.D.Ga.1986); *Friedlander v. Troutman, Sanders, Lockerman & Ashmore,* 595 F.Supp. 1442 (N.D.Ga.1984), *rev'd on other grounds,* 788 F.2d 1500 (11th Cir. 1986); *Smith v. Southeastern Stages, Inc.,* 479 F.Supp. 593 (N.D.Ga.1977). In deciding a summary judgment motion, the court will assess the evidence's admissibility and will consider any objections raised by the defendants to testimony presented in the plaintiff's affidavits when ruling on the merits of the summary judgment motion. Accordingly, the defendant's motion to strike is DENIED.

### III. MOTION FOR SUMMARY JUDGMENT

Sears contends that it is entitled to summary judgment on all four counts of the complaint because the evidence is insufficient that the garment worn by the plaintiff on the day of the fire was the 29K3111F gown or any other garment sold by Sears. Sears also argues that the strict liability and negligence counts (Counts I, II and IV) are barred by the applicable statutes of repose. Finally, Sears argues that the warranty claim (Count III) is barred for failure to give reasonable notice of injury.

#### A. *Sufficiency of Evidence.*

 The court cannot agree with Sears that the plaintiff's evidence in support of her identification of the gown in question is not sufficient to create a genuine issue as to a material fact. Sears contends the plaintiff cannot prove the 29K3111F gown was the one worn by the plaintiff when the

incident occurred, nor that gown worn by the plaintiff was bought at Sears. It is undisputed that no tangible evidence such as a remnant of the garment involved in the fire, receipts, cancelled checks, catalogue order forms, or other documents exist to identify the gown or to support the plaintiff's claim that her mother purchased the 29K3111F gown from Sears. However, each of the remaining "facts" on which Sears relies in describing the plaintiff's identification of the 29K3111F gown as speculative is refuted to some extent by the plaintiff.

Sears contends that at the time of the incident, the plaintiff's mother had not dressed the plaintiff and had not seen what garment the plaintiff was wearing. The only person to see the garment the plaintiff was wearing at the time of the fire was her then-twelve-year-old sister Tonya. Tonya's knowledge of where the garment was purchased is based solely on what her mother told her, but the plaintiff presents evidence that Tonya can state positively that the gown in question was a 29K3111F gown. Also, though the plaintiff admits her mother was not present when the fire occurred, her mother has stated that the 29K3111F gown was the only gown that the plaintiff owned and wore at the time.

Sears points to the contradictory identifications by the plaintiff's mother as showing the speculative nature of the plaintiff's identification of the gown. Sears contends that in initial contacts with Sears, the plaintiff's attorneys described the garment as "pajamas purchased by the Plaintiff's mother from the Sears 1969 Christmas catalog" and then "a nightgown (rather than pajamas) purchased from the Sears 1967 Christmas catalog." Sears emphasizes that the plaintiff's mother reviewed a number of Sears catalogues in November and December 1982, in an effort to identify the gown worn by the plaintiff. Sears also emphasizes that in July 1983, the plaintiff notified Sears that the garment involved in the fire was a gown advertised in the 1967 Fall and Winter catalog, style number 29G3152F, a long-sleeved gown made of medium weight combed cotton, but finally picked the 29K3111F gown from the Spring/Summer 1968 catalogue.

The plaintiff does not deny the initial descriptions of "pajamas," but adds that the second description further identified the garment as a "granny gown." The plaintiff contends that her mother reviewed numerous catalogues because she was unable to find the correct granny gown in the catalogues she was furnished. The plaintiff adds that, from December 1982, her mother described the gown as "a material other than flannel, white with small flowers scattered, layers of ruffles on the gown itself from the waist down" and described the model in the catalog as "having blonde hair, no cap coming with the gown."

The plaintiff contends that her mother made first identification from the 1967 catalogue upon Sears' counsel's "demand" that she choose a gown and that she "chose the gown most similar to the one I remembered." The plaintiff also points out that when, in June 1986, she notified Sears that the gown involved in the fire was the 29K3111F gown, she submitted to Sears page 380 of the Sears 1968 Spring/Summer catalog showing a gown pink and white in color being modeled by a blonde girl without a hat.

Sears further questions the plaintiff's identification because of with the description of the gown as a "nylon" nightgown in the hospital records of the plaintiff's emergency room and initial treating physician, Dr. Arnall, though the 29K3111F gown is a 100% cotton gown. The plaintiff responds with Dr. Arnall's testimony that the actual fabric of the garment made no difference in his manner and method of treating the plaintiff and that the "nylon" description appears in the discharge summary dictated fifteen days after the plaintiff was admitted. The plaintiff also argues that the term "nylon" was used in a generic sense.

Seizing on the statement in the plaintiff's responses to Sears' first interrogatories that the "nightgown melted to plaintiff's body and had to be scraped/surgically removed," Sears points to evidence that cotton fabric will not melt, while nylon fabric will melt, presumably indicating the gown

could not have been the Sears cotton gown. The plaintiff backs away from the language of her interrogatory response and points to the testimony of her mother and her eldest sister, Vikki Morgan Chestnut, making reference to the nightgown "sticking" to the plaintiff's body. The plaintiff also points to the testimony of her proposed expert witness, Dr. Robert Johnson. The defendant has objected to Dr. Johnson's testimony concerning the burn pattern experienced by the plaintiff. The court is satisfied that his expertise is directly related to his affidavit testimony. He states that nylon nightgowns have a much slower burning rate and are more difficult to ignite that cotton nightgowns. Because nylon nightgowns are generally self-extinguishing, if the plaintiff had been wearing a nylon nightgown, the burned area would not have exceeded a three-inch by three-inch area. Therefore, in his opinion, the burn pattern demonstrated by photographs of the plaintiff shows that the nightgown was made of cotton rather than nylon, because nylon would not have caused the scope of burns experienced by the plaintiff.

Finally, Sears contends that the plaintiff's eldest sister, Vikki Morgan Chestnut, remembers that the garment involved in the fire was purchased before the plaintiff was born in January 1967, making it impossible for the gown to be the 29K3111F gown, since it was not advertised for sale until spring 1968. The plaintiff counters that her mother, who bought the gown, would be in the best position to know when the garment was purchased and disagrees with the eldest daughter.

From the foregoing conflicting evidence, it is clear that the plaintiff has demonstrated "disputes over facts that might affect the outcome of the suit under the governing law" with evidence "such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). While the plaintiff's identification evidence is far from airtight, reasonable minds could differ as to the weight and import of the evidence, and summary judgment is there-

fore inappropriate. *Id.* at 250, 106 S.Ct. at 2511.

█ The defendant also argues that the plaintiff's identification of the 29K3111F gown as the gown involved in the fire is contrary to the undisputed scientific evidence in the case, citing *Ralston Purina Company v. Hobson*, 554 F.2d 725, 729 (5th Cir.1977) ("evidence manifestly at variance with the laws of nature and the physical facts is of no probative value and may not support a jury verdict"). Sears claims the scientific evidence shows the gown was nylon, because of the description of the gown melting, which a cotton gown will not do.

However, the plaintiff's expert's testimony described above about the different burning characteristics of nylon and cotton shows the burn is consistent with a cotton gown. The plaintiff also reiterates evidence discussed above, questioning the weight of the hospital records' reference to a nylon nightgown and the description of the nightgown as having melted. This evidence is sufficient to establish that, for summary judgment purposes, the plaintiff's evidence is not necessarily at variance with the laws of nature.

### B. *Strict Liability (Count I).*

Georgia's strict liability statute, found at O.C.G.A. § 51–1–11(b), provides:

(1) The manufacturer of any personal property sold as new property directly or through a dealer or any other person shall be liable in tort, irrespective of privity, to any natural person who may use, consume, or reasonably be affected by the property and who suffers injury to his person or property because the property once sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injuries sustained.

(2) No action shall be commenced pursuant to this subsection with respect to an injury after ten years from the date of the first sale for use or consumption of the personal property causing or otherwise bringing about the injury.

(3) A manufacturer may not exclude or limit the operation of this subsection.

The defendant contends that it is not liable under the above statute for three reasons. First, it contends the statute does not apply because there is no evidence that the gown was purchased after the effective date of the statute. Second, Sears denies liability because it was not the manufacturer of the garment in question and third, because the ten-year statute of repose has run on the plaintiff's claim and was not tolled by the plaintiff's minority.

### 1. Whether the Strict Liability Statute Applies

■ An initial question is whether section 51-1-11 applies to this action. This statute creating strict liability in Georgia was enacted on July 1, 1968. There is no evidence in the record establishing when the plaintiff's mother purchased the gown. There is, however, evidence that the gown was bought from Sears' 1968 Spring/Summer catalogue. If the mother bought the gown before July 1, 1968, the strict liability statute would not apply to this action. *Wansor v. George Hantscho Co., Inc.*, 243 Ga. 91, 252 S.E.2d 623 (1979). Consequently, if the gown was purchased after July 1, 1968, the strict liability statute will apply to the action. For a summary judgment motion, the court must view the evidence and factual inferences in the light most favorable to the non-moving party. *Rollins v. TechSouth, Inc.*, 833 F.2d 1525 (11th Cir. 1987); *Everett v. Napper*, 833 F.2d 1507 (11th Cir.1987). It can be inferred from the fact that the gown was purchased from the Spring/Summer 1968 catalogue that the gown was purchased after July 1, 1968. Therefore, for purposes of this summary judgment motion, the strict liability statute can apply to this fact situation.

### 2. Ostensible Manufacturer Theory

■ Sears contends it is not strictly liable because it was not the manufacturer of the gown. The record shows that Sears approved the fabric used in garments it sold, though it is unclear if this approval included the flammability of the material. The record also reveals that the general procedure was for the manufacturer to place the Sears label in each garment made for Sears.

By its terms and Georgia case law, section 51-1-11 applies only to manufacturers, not distributors or retailers. O.C.G.A. 51-1-11(b); *Ellis v. Rich's, Inc.*, 233 Ga. 573, 212 S.E.2d 373 (1975). However, Georgia has adopted the ostensible manufacturer theory. In *Pierce v. Liberty Furniture Company, Inc.*, 141 Ga.App. 175, 233 S.E. 2d 33 (1977), the court addressed the issue of whether one who assembles component parts and sells them as a single product under its trade name is a manufacturer of the entire product into which the parts are integrated under 51-1-11. The defendant in *Pierce* was a distributor who had "assembled" the product in question (a porch swing kit) by inserting the swing hardware, which it had purchased from another company in a closed plastic container, into the kit along with the chair it had manufactured. The distributor then sold the kit in a sealed package to a retailer, who in turn sold it to the plaintiff who, after assembling the porch swing, was injured when one of the hardware pieces broke.

The court found that the evidence supported the inference that the distributor sold the defective hardware as a part of a kit under its own name and trademark and therefore had not acted "as a mere distributor selling products acknowledged to have been constructed by others." *Id.* at 178-79, 233 S.E.2d 33. The court concluded:

> [T]he Second Restatement of the Law of Torts § 400 states, "One who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer." *See Moody v. Sears, Roebuck and Co.*, 324 F[.] Supp. 844 (S.D.Ga.1971). Based on this precedent and the fact that one selling a product under its trade name causes the chattel to be used in reliance upon its care in making the item, we hold that an entity which assembles component parts and sells them as a single product under its trade name is a "manu-

facturer" within the meaning of [O.C.G.A. § 51–1–11(b)].

*Id.* at 179, 233 S.E.2d 33.

*Pierce* can be distinguished from the present case because Sears did no assembling of the gown in question. However, all of the authorities relied on in *Pierce* hold that labeling alone is sufficient to constitute ostensible manufacturing. *See, e.g., Moody v. Sears, Roebuck and Company,* 324 F.Supp. 844 (S.D.Ga.1971) (stating that "where a retailer is not a mere conduit but represents itself to be the manufacturer and holds out the product as its own, it must be treated as a manufacturer and subject to the same liability.") [1]; Restatement of the Law of Torts (2d) § 400. Moreover, the *Pierce* formulation has been approved repeatedly. In *Rhodes v. Interstate Battery System of America,* 722 F.2d 1517 (11th Cir.1984), the defendant retailed an automobile battery, manufactured by another company, under its own name. The Eleventh Circuit, citing *Pierce,* held that "a company selling as its own product a chattel manufactured by another is subject to liability as the product's manufacturer," *id.* 141 Ga.App. at 1520, 233 S.E.2d 33, and reversed the holding of the district court to the contrary. In *Holman Motor Company v. Evans,* 169 Ga.App. 610, 314 S.E.2d 453 (1984), the court did not disagree with the plaintiff's argument that a retailer can be held strictly liable as one representing itself as the manufacturer and holding the product out as its own when the retailer's trade name appears on the merchandise and there is nothing connected with the sale to show that anyone but the retailer was involved. *Id.* at 611, 314 S.E.2d 453. The court held against the plaintiff, however, because the owner's manual for the car involved in that case

specifically identified the manufacturer as someone other than the defendant (distinguishing *Moody,* where only Sears' name was on the product). *Id.*[2]

Given this case law, therefore, the Georgia courts are likely to find that Sears is the ostensible manufacturer of the product, and therefore subject to liability under § 51–1–11.

### 3. Statute of Repose Issues

Section 51–1–11(b)(2) reads:

No action shall be commenced pursuant to this subsection with respect to an injury after ten years from the date of the first sale for use or consumption of the personal property causing or otherwise bringing about the injury.

The defendant argues that, in the absence of any precedent directly addressing the question, four factors indicate the Georgia courts would not toll the strict liability statute of repose for minority: (1) the strict liability statute is strictly construed; (2) the only Georgia statute of repose to which tolling has been determined to apply is the medical malpractice statute which expressly provides tolling for minority; (3) where a specific statute is in conflict with a general statute, the specific statute should prevail; and (4) other jurisdictions (Oregon and Massachusetts) have not tolled their products liability statutes for minority or insanity.

 Before the tolling issue can be reached, the court must determine if the statute of repose applies to the present factual situation. We assume the product was bought after July, 1968. The plaintiff was injured in 1970. The Georgia legislature passed the statute of repose in 1978. The plaintiff brought her action in 1986.

---

**1.** Defendant relies on *Purkey v. Sears, Roebuck and Co.,* 220 F.2d 700 (5th Cir.1955) to dispute the ruling in *Moody.* However, *Purkey* has not been cited favorably by the Georgia courts, as has *Moody.* Also, *Purkey* is not applicable here because the issue there was the sufficiency of the evidence showing Sears' negligence in failing to discover and warn of the dangerous characteristic of the product. It did not address the issue of whether Sears could be considered the manufacturer of the product.

**2.** A recently enacted code section, O.C.G.A. § 51–1–11.1, which took effect after the filing of this action, may modify the ostensible manufacturer theory. The statute defines a "product seller," in part, as a person who labels or assembles a product and then states that a product seller is not a manufacturer under section 51–1–11. As an attempt to modify the existing law the statute is further evidence that the ostensible manufacturer theory was good law at the time this action was filed.

In *Daniel v. American Optical Corp.*, 251 Ga. 166, 304 S.E.2d 383 (1983), the Georgia Supreme Court dealt with a products liability action based on an injury that occurred in 1978, after the strict liability statute was in effect but before the effective date of the 1978 amendment adding the ten-year statute of repose of § 51–1–11(b)(2). The court held that the 1978 amendment was not meant to preclude the application of the general personal injury statute of limitations. The court noted that the statute of limitations is keyed to the type of injury involved in the suit, not the legal theory under which the suit is brought. Therefore, the court held for injuries occurring before the statute of repose was enacted the general two-year statute of limitations (§ 9–3–33) applies. The plaintiff's action in that case was therefore barred because it was not timely filed.

The defendant cites *Hatcher v. Allied Products Corp.*, 256 Ga. 100, 344 S.E.2d 418 (1986), holding that the statute of repose is an absolute bar to a strict liability action. *See also, Weeks v. Remington Arms Co.*, 733 F.2d 1485 (11th Cir.1984). Both these cases, however, concern injuries that happened after 1978, though the sale of the goods were before 1978. *Daniel*, however, involved an injury before 1978, as is the case here. *Weeks* presents the most satisfying explanation for this apparent conflict. *Weeks* explains that under Georgia law a new statute of limitations cannot be applied to a cause of action that accrued before that limitation went into effect. Georgia law prohibits a statute from having retroactive effect unless the statute expressly provides for it. *See, Jaro, Inc. v. Shields*, 123 Ga.App. 391, 181 S.E.2d 110 (1971); O.C.G.A. § 1–3–5. Under Georgia law a cause of action accrues when the plaintiff can first bring the action. *U–Haul Co. of Western Georgia v. Abreu & Robeson, Inc.*, 247 Ga. 565, 277 S.E.2d 497 (1981). For a tort, this is when the injury occurs. *Everhart v. Rich's*, 229 Ga. 798, 194 S.E.2d 425 (1972). Georgia law thus bars application of the statute of repose to the present action since the plaintiff's claim accrued on the date of her injury in 1970.

At that time, the two year statute of limitation applied to her action.

■ O.C.G.A. § 9–3–90 tolls an action when the cause of action accrued when the person was under a disability, including infancy. Minors are "entitled to the same time after their disability is removed to bring an action as is prescribed for other persons." *Id.* O.C.G.A. § 9–3–98 makes § 9–3–90 applicable to tort actions. Because § 51–1–11 authorizes an action in tort, the tolling statute applies to the 2 year limitation statute for the present action. As a result, since the plaintiff did not reach majority age until 1986, her strict liability action is not untimely.

### C. *Negligence (Counts II and IV).*

■ Sears initially argued that the ten-year statute of repose also applied to the plaintiff's negligence claims by virtue of § 51–1–11(c), which applies the 10 year strict liability statute of repose to negligence action against the manufacturer. Because the court has concluded the statute of repose does not apply to this factual situation in a strict liability action, it likewise does not apply in the negligence action. In addition, the plaintiff correctly points out that section 51–1–11(c) did not become effective until July 1, 1987, after this action was filed, also indicating it is inapplicable.

■ Sears argues that it is entitled to summary judgment on the plaintiff's negligence claims because the plaintiff cannot carry her burden of proving negligence. To the extent this part of the defendant's argument repeats its earlier challenge to the sufficiency of the plaintiff's evidence, the court has already rejected it. There is evidence in the record that could lead a reasonable jury to believe Sears was negligent. *See*, Deposition of Dr. Johnson. But Sears argues in addition that its compliance with the federal flammability standards then in effect, Statement of Material Facts ¶¶ 23–25, shifts the burden to the plaintiff to produce *substantial* evidence that the fabric was nevertheless unreasonably dangerous for normal use. Neither of the two cases cited by the defendant for this propo-

sition applied Georgia law and there is no other indication that Georgia courts would impose the same evidentiary burden on the plaintiff at the summary judgment stage. Furthermore, Georgia law is clear that compliance with government standards does not end the inquiry. The Georgia courts have repeatedly stated that the defendant's compliance with regulations may be a factor for the jury in determining negligence, but that the jury could still find that "although the defendant complied fully with all the city regulations, it was still negligent." *Johnson v. Fowler Electric Co., Inc.*, 157 Ga.App. 319, 277 S.E.2d 312 (1981), quoting *Central of Georgia R. Co. v. Bernstein*, 113 Ga. 175, 38 S.E. 394 (1901). *See also, Carlo v. Americana Health Corp.*, 179 Ga.App. 678, 347 S.E.2d 282 (1986).

### D. *Warranty (Count III).*

Sears argues that it is entitled to summary judgment on the plaintiff's warranty claim because O.C.G.A. § 11-2-607 requires notice of a breach of warranty to the seller "within a reasonable time" after the breach. As the plaintiff correctly points out, however, by its terms § 11-2-607's notice requirement applies only to the buyer and not to a third-party beneficiary such as the plaintiff.

The official comment to section 2-607 of the Uniform Commercial Code apparently would impose the notice requirement on third-party beneficiaries, but the authority in Georgia is to the contrary. In *Chaffin v. Atlanta Coca-Cola Bottling Company*, 127 Ga.App. 619, 194 S.E.2d 513 (1972), the court specifically held that the notice provisions of § 11-2-607 cannot apply to a plaintiff who is a third-party beneficiary because "as to the third party there has been no tender of the goods by the seller ... and no acceptance by plaintiff. She had nothing to do with the acceptance as she was not the buyer." *Id.* at 620, 194 S.E.2d 513.

### IV. CONCLUSION

In summary, the defendant's motion to strike the plaintiff's affidavits is DENIED as an inappropriate vehicle for the defendant's objections to the admissibility of the affidavits. The defendant's motion for summary judgment is also DENIED—the plaintiff's evidence is sufficient to create a genuine issue of material fact as to the identity of the gown and the defendant's liability, the plaintiff may rely on the ostensible manufacturer theory, her strict liability claim is not untimely because general tolling principles apply to injuries prior to 1978, the plaintiff's negligence claims are not untimely for the same reason and her evidence of negligence is sufficient to preclude summary judgment, and, finally, the plaintiff as a third-party beneficiary was not required to give notice within a reasonable time of the defendant's alleged breach of warranty.