A07A0941. CHANCEY et al. v. PEACHTREE PEST CONTROL COMPANY, INC.

(655 SE2d 228)

RUFFIN, Judge.

Elizabeth Chancey sued Peachtree Pest Control Company, Inc. to recover for personal injuries she allegedly sustained as a result of

exposure to a pesticide Peachtree Pest Control used at her work-place.[1] The jury returned a verdict in favor of Peachtree Pest Control, and the trial court entered judgment for the defendant. On appeal, the Chanceys allege that the trial court erred in admitting certain evidence and in charging the jury. They also contend that the trial court erred in denying their motion for a partial directed verdict and motion for judgment notwithstanding the verdict. Because the trial court erred in admitting evidence, we reverse.

Viewed in a light favorable to the verdict,[2] the evidence shows that Garland Gillette, an employee of Peachtree Pest Control, applied pesticide — Talstar — at the offices of the Molex Connector Corporation in December 1999. Chancey, a Molex employee, testified at trial that Gillette applied pesticide to the room and desk where she was seated.[3] According to Chancey, she had an immediate allergic reaction to the pesticide and suffered serious permanent health problems—including reactive airways dysfunction syndrome ("RADS"), a rare lung disorder, and vocal cord dysfunction — as a result of the chemical exposure.

The Chanceys filed suit against Peachtree Pest Control claiming, inter alia, that Gillette negligently mixed and applied the pesticide. The jury returned a verdict in favor of the defendant, and the Chanceys appeal.

1. At trial, Peachtree Pest Control tendered a summary of a detailed report regarding the chemical Talstar that an independent laboratory prepared for submission to the Environmental Protection Agency. The Chanceys objected to the admission of the summary, arguing that it constituted impermissible hearsay and was incomplete, but the trial court admitted it over their objection.[4] We agree that the trial court erred in admitting the document and in permitting a defense witness to testify regarding its contents.

The document in question consisted of a two-page summary of a laboratory study, concluding that Talstar was safe for spot treatment where food was present because application of the chemical left no residue on tables. John Wright, an expert witness for Peachtree Pest Control, testified that he "authorized" the study and set forth the methodology, and that "the individuals that did the actual application [in the study] reported directly to [him]." Wright was not, however, present for the testing, which was conducted by the independent

---

[1] Chancey's husband asserted a loss of consortium claim.

[2] See *Vojnovic v. Brants*, 272 Ga. App. 475 (612 SE2d 621) (2005).

[3] Gillette testified that he applied pesticide in the office suite, but not to Chancey's desk or the area where she was seated.

[4] According to counsel for the Chanceys, Peachtree Pest Control had provided the plaintiffs with only two pages of the 117-page summary.

laboratory. The summary was admitted into evidence and an enlarged copy was shown to the jury. Wright testified about the report, explaining the methodology of the study and its results, and read directly from the document.

"Hearsay evidence is that which does not derive its value solely from the credit of the witness but rests mainly on the veracity and competency of other persons," and is inadmissible unless it falls within a permissible exception to the hearsay rule.[5] The document at issue falls squarely within the hearsay definition.[6]

Those portions of a laboratory report that contain "the opinions or conclusions of a third party not before the court . . . are inadmissible hearsay until a proper foundation has been laid, i.e., the person who entered such opinions or conclusions upon the record must qualify as an expert and relate the facts upon which the entry was based."[7] Here, although Wright may have commissioned the study, he was not present for the testing and apparently did not interpret or analyze the results contained in the summary. Thus, the trial court erred in admitting the document, as well as in allowing Wright to testify regarding the conclusions reached therein.[8]

The erroneous admission of hearsay evidence does not mandate reversal where the admission is cumulative of legally admissible evidence and therefore harmless.[9] But Peachtree Pest Control does not allege that the error was harmless. And given that the record in this case consists of eighteen volumes, including a ten-volume trial transcript, we decline to cull the record on the defendant's behalf to determine whether the evidence was cumulative.[10] Thus, we reverse.

2. We will address the Chanceys' remaining claims of error because they are likely to recur upon retrial of this case.[11]

---

[5] OCGA § 24-3-1 (a).

[6] Peachtree Pest Control argues, without providing a single citation of authority, that the document was not hearsay. It does not contend that the evidence was admissible under any exception to the hearsay rule.

[7] (Punctuation omitted.) *Sticher v. State*, 209 Ga. App. 423, 424 (3) (433 SE2d 660) (1993); *Dept. of Human Resources v. Corbin*, 202 Ga. App. 10 (413 SE2d 484) (1991) (physical precedent only). Compare *Moody v. State*, 210 Ga. App. 431, 433 (3) (436 SE2d 545) (1993) (expert testimony regarding test properly admitted where expert did not actually perform test, but "supervised the technician and conducted the interpretation, statistical analysis and measurements which generated the report").

[8] See *John Crane, Inc. v. Jones*, 262 Ga. App. 531, 535-536 (2) (586 SE2d 26) (2003) (trial court properly excluded expert testimony about the actual results of testing performed by others); *Sticher; Corbin*, supra.

[9] See, e.g., *Smith v. Stacey*, 281 Ga. 601, 601-602 (1) (642 SE2d 28) (2007).

[10] See *Manderson & Assoc. v. Gore*, 193 Ga. App. 723, 733-734 (8) (389 SE2d 251) (1989) (" 'It is not the function of this court to cull the record on behalf of a party.' ").

[11] See *Warner v. State*, 277 Ga. App. 421, 423 (2) (626 SE2d 620) (2006).

(a) The Chanceys allege that the trial court erred in instructing the jury that "the application of pesticides in a manner consistent with its federally registered label does not fall below the standard of care." We agree.

"Compliance with [a statute] does not necessarily demonstrate that a defendant exercised ordinary care."[12] The charge, as given, suggests otherwise and is therefore an inaccurate statement of the law and potentially misleading to the jury.[13]

(b) The Chanceys further contend that they were entitled to judgment as a matter of law as to their claim of negligence per se, arguing that the uncontroverted evidence showed that Gillette prepared the pesticide in a manner inconsistent with its label. Specifically, the Chanceys argue that Gillette placed the water and the pesticide in the applicator in improper order, in direct violation of the label. The Talstar label provided the following "General Application Instructions":

> The following procedure is recommended for preparation of a new tank mix, unless specified otherwise in label directions: (1) Add wettable powders to tank water, (2) Agitate, (3) Add liquids and flowables, (4) Agitate, (5) Add emulsifiable concentrates, and (6) Agitate. If a mixture is found to be incompatible following this order of addition, try reversing the order of addition, or increase the volume of water.

The label also specified the following mixing instructions for indoor application: "Talstar is to be diluted with water for spray or brush application. Fill sprayer with the desired volume of water and add Talstar. Close and shake before use in order to insure proper mixing." When Gillette prepared the Talstar for application at the Molex office, he put the pesticide in the bottom of the bottle and then added the water.

Negligence per se arises "when a statute is violated, the person injured by the violation is within the class of persons the statute was intended to protect, and the harm complained of was the harm the statute was intended to guard against."[14] The Chanceys argue that

---

[12] *Sinclair Disposal Svc. v. Ochoa*, 265 Ga. App. 172, 173 (593 SE2d 358) (2004); see also *Doyle v. Volkswagenwerk Aktiengesellschaft*, 267 Ga. 574, 577 (481 SE2d 518) (1997); *Carlo v. Americana Healthcare Corp.*, 179 Ga. App. 678, 680 (1) (347 SE2d 282) (1986) (compliance with applicable rules and regulations does not relieve a defendant from liability if it is otherwise negligent).

[13] See *Sinclair Disposal*, supra.

[14] *Murphy v. Bajjani*, 282 Ga. 197, 200 (2) (647 SE2d 54) (2007).

Peachtree Pest Control violated OCGA § 2-7-62 (b) (3), which provides that it is unlawful "[f]or any person to use or cause to be used any pesticide in a manner inconsistent with its labeling."

Here, given the multiple instructions included on the pesticide label — particularly that portion suggesting that the preparer reverse the order of the added components — the trial court properly concluded that the issue of whether the chemical was mixed in a manner inconsistent with its label was a jury question. Moreover, even if Gillette and Peachtree Pest Control violated OCGA § 2-7-62 (b) (3), it would not entitle the Chanceys to judgment as a matter of law, as it would improperly "remove the issue of proximate cause from the jury."[15] "Negligence per se is not liability per se. Negligence per se is actionable negligence only where it is the proximate cause of the plaintiff's injuries. Proximate cause is for the jury to decide."[16] Thus, the trial court did not err in denying the Chanceys' motions on this basis.

*Judgment reversed. Blackburn, P. J., and Bernes, J., concur.*

DECIDED NOVEMBER 7, 2007 —
RECONSIDERATION DENIED DECEMBER 5, 2007 — 

*Bovis, Kyle & Burch, James E. Singer, Gregory T. Presmanes*, for appellants.

*Decker, Hallman, Barber & Briggs, W. Winston Briggs*, for appellee.

---

[15] *Humphreys v. Kipfmiller*, 237 Ga. App. 572, 575 (2) (515 SE2d 878) (1999); see *Hite v. Anderson*, 284 Ga. App. 156, 158 (643 SE2d 550) (2007); *Torres v. Tandy Corp.*, 264 Ga. App. 686, 688 (1) (592 SE2d 111) (2003).
[16] (Citation omitted.) *Humphreys*, supra.