**James Howard JORDAN, Plaintiff,**

v.

**COBB COUNTY, GEORGIA, and Mitchell Avery Worley, Defendants.**

No. CIV.A.1:99–CV–2837–J.

United States District Court, N.D. Georgia, Atlanta Division.

Sept. 28, 2001.

Sidney L. Moore, Jr., Office of Sidney L. Moore, Jr., Jason R. Schultz, Office of Jason R. Schultz, Atlanta, GA, for Plaintiff.

Dorothy Hemmer Bishop, Christine C. Daniel, Stephen D. Morrison, Jr., Hugh William Rowling, Jr., Office of Cobb County Attorney, Law Department, Marietta, GA, George M. Weaver, Hollberg & Weaver, Atlanta, GA, for Defendants.

### ORDER

CARNES, District Judge.

The above-captioned action is before the Court on defendants' Motion for Summary Judgment [20], plaintiff's motion to re-open discovery [29], defendant's motion to strike statement of John Arthur Smith [30], defendants' motion to extend time to file a reply brief [31], and Christine Daniel's motion to withdraw as counsel for defendants [42].

The Court has reviewed the record and the arguments of the parties and, for the reasons set forth below, concludes that defendants' motion for summary judgment [20] should be **GRANTED IN PART and DENIED IN PART**, plaintiff's motion to re-open discovery [29] should be **DENIED**, defendant's motion to strike statement of John Arthur Smith [30] should be **DENIED**, defendants' motion to extend time to file a reply brief [31] should be **GRANTED**, and Christine Daniel's motion to withdraw as counsel for defendants [42] should be **GRANTED**.

## BACKGROUND

### I. Introduction

This case arose out of the shooting of plaintiff James Howard Jordan by Cobb County Police Officer Mitchell Avery Worley while plaintiff was in the custody of the Cobb County Police Department after having been arrested for suspicion of driving under the influence of alcohol ("DUI"). Plaintiff filed the Complaint in this action on October 29, 1999. He has asserted claims under 42 U.S.C. §§ 1983 and 1988 and the Fourth and Fourteenth Amendments to the Constitution against both Cobb County and Officer Worley, and he has also asserted a state law claim of assault and battery against Officer Worley. Plaintiff claims that Officer Worley and Cobb County subjected him to excessive force and a wrongful seizure in violation of the Fourth and Fourteenth Amendments, and also claims that Officer Worley committed an unlawful assault and battery against him.

Pursuant to an Order entered on July 10, 2000[16], the discovery period in this action ended on October 3, 2000. On October 20, 2000, defendants filed a motion for

summary judgment [20], arguing that plaintiff has failed to present sufficient evidence to establish a genuine issue of material fact over whether his constitutional rights were violated or whether Officer Worley committed an assault and battery against him, and also arguing that Officer Worley is entitled to qualified immunity on all plaintiff's claims against him personally. On November 15, 2000, plaintiff filed a motion to re-open discovery [29] in order to conduct a limited inquiry into the facts underlying a newspaper report of an allegedly similar incident involving a shooting of a suspect by another Cobb County Police Officer. Both of these motions, as well as a motion by defendants to strike a statement submitted by plaintiff [30], a motion by defendants to extend the time to file a reply brief [31], and a motion by defense counsel Christine Daniel to withdraw as counsel for defendants [42], are now pending before the Court.

## II. *Summary of Facts*

In sum, the undisputed facts in this matter are that plaintiff was arrested by Officer Worley on January 28, 1999, for suspicion of driving under the influence of alcohol; plaintiff was thereafter taken by Officer Worley to Precinct One of the Cobb County Police Department; while in a holding cell, plaintiff resisted being handcuffed by Officer Worley; after a struggle or altercation, plaintiff was shot twice in the abdomen by Officer Worley; and there were no witnesses to the shooting other than plaintiff and Officer Worley. Virtually all of the facts and circumstances surrounding the altercation and the shooting are in dispute, as plaintiff and Officer Worley have presented very different accounts of what transpired between them. Unsurprisingly, plaintiff contends that Worley was the aggressor and shot him without any provocation, while Worley contends that he only shot plaintiff because plaintiff was beating him with his own baton and Worley feared for his life.

For the purposes of this discussion, the Court must construe all facts in a light most favorable to the plaintiff, as required on a defendant's motion for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *McCabe v. Sharrett*, 12 F.3d 1558, 1560 (11th Cir. 1994); *Reynolds v. Bridgestone/Firestone, Inc.*, 989 F.2d 465, 469 (11th Cir.1993). Accordingly, the following facts are viewed in the light most favorable to plaintiff, and are assumed true only for the purposes of this discussion.

Officer Mitchell Avery Worley has been employed with the Cobb County Police Department ("CCPD") since December 4, 1994, and is currently an agent assigned to the Marietta–Cobb–Smyrna Narcotics Unit. (Defs. Statement of Material Facts as to Which There Are No Genuine Issue to Be Tried ("SMF") at ¶ 1.) On January 28, 1999, Worley was a uniformed patrol officer assigned to the Uniform Patrol Division of the CCPD. (*Id.* at ¶ 6.) At approximately 11:22 p.m. on January 28, 1999, Worley was dispatched to an accident in the parking lot of a Kroger on Canton Road at New Chastain, Cobb County, Georgia. (*Id.* at ¶ 15.) Upon being dispatched, Worley activated his lights and siren and traveled to the accident location in his patrol vehicle. (*Id.* at ¶ 16.) The patrol vehicle that Worley was operating on that day was equipped with video and audio recording equipment; such equipment is installed and designed to activate upon the activation of the emergency equipment by the officer operating the vehicle. (*Id.* at ¶ 17.) Upon arrival at the accident location, Worley learned that a male, later identified as plaintiff James Howard Jordan, had driven his white Ford minivan into a post in front of the Kroger

store. (*Id.* at ¶ 18; see Plaintiff's Response to Defendants' Statement of Material Facts ("Pl. Resp. to SMF") at ¶ 18.)

Plaintiff had earlier been at a bar/restaurant called Brewsters with friends celebrating the fact that the Atlanta Falcons football team was going to play in the Superbowl. (Pl. Dep. at 43–46.) While at Brewsters, plaintiff had two shots of Jack Daniels and two kamikazes and had shared a pitcher of beer with his friends. (*Id.* at 46.) After leaving Brewsters by himself at approximately 11:15 p.m., plaintiff drove his minivan by a Kroger grocery store that was in the same shopping center as Brewsters, and saw a woman and a small child step off the curb in front of the Kroger. (*Id.* at 47, 51.) Plaintiff could see the mother but he could not see the child who had just stepped off the curb, and he quickly applied his brakes and turned the steering wheel to avoid hitting the child, at which point plaintiff drove his van into a pole or column in front of the Kroger store. (*Id.* at 48.) His air bag deployed, and plaintiff got out of the van; he was not injured from the collision. (*Id.* at 49.)

Soon afterwards Officer Worley arrived on the scene, and was joined by CCPD Officer Ott; Worley spoke with plaintiff about the accident and observed that plaintiff smelled strongly of alcohol and that plaintiff's speech was slurred. (SMF at ¶ 19.) When Worley asked him to produce his license and proof of insurance, plaintiff produced a license that had expired in May, 1998. (*Id.* at ¶ 21.) Worley then administered several field sobriety tests to plaintiff. (*Id.* at ¶ 22.) As a result of those field sobriety tests and Worley's observations of plaintiff, Worley advised plaintiff that he was placing plaintiff under arrest for driving under the influence of alcohol ("DUI"). (*Id.* at ¶ 23.)

Worley and Ott then placed handcuffs on plaintiff, although plaintiff contends that he objected to the handcuffs and asked several times that the officers remove the handcuffs. (*Id.* at ¶¶ 24–25; Pl. Resp. to SMF at ¶¶ 25–26.) Plaintiff then spoke with his two roommates who had arrived on the scene about calling a tow truck for his wrecked van. (SMF at ¶ 31.) Worley then placed plaintiff in the patrol vehicle and began to transport plaintiff to CCPD Precinct 1 to administer the state test, which plaintiff had agreed to take. (*Id.* at ¶ 32.)

Upon arrival at Precinct 1, Worley removed plaintiff from the patrol vehicle and placed him in one of the two holding cells. (*Id.* at ¶ 34.) Although Worley had apprised others via radio that he had arrived at the precinct with his arrestee, Worley did not observe any other officers or persons in the building or in the vicinity. (*Id.* at ¶ 35.) Plaintiff then asked Worley again to remove the handcuffs so that he could go to the restroom. (*Id.* at ¶ 36; Pl. Resp. to SMF at ¶¶ 25, 36.) Worley complied with plaintiff's request, removed his handcuffs, locked the holding cell door leaving plaintiff inside, observed plaintiff urinate to ensure that plaintiff did not flush any contraband down the commode, and then proceeded to another room in the precinct where the intoximeter was located in order to warm up the machine to administer the test to plaintiff. (SMF at ¶ 37.) While waiting for the intoximeter to warm up, Worley began his paperwork on plaintiff's arrest. (*Id.* at ¶ 38.)

Worley then went back to the holding cell to re-handcuff plaintiff and to escort him to the intoximeter to administer the test. (*Id.* at ¶ 39.) At this point, the accounts of Worley and plaintiff diverge sharply. According to plaintiff, Worley came back to the holding cell and told him that he had to be handcuffed to be taken to the intoximeter, but plaintiff requested several times that he not be handcuffed.

(Pl. Dep. at 66.) Worley responded that plaintiff had to be handcuffed, and proceeded to place handcuffs on plaintiff despite his protests. (*Id.* at 66.) Plaintiff tried to back up in the holding cell so that Worley could not place handcuffs on him. (*Id.* at 69–70.) Worley attempted to grab plaintiff's hands to put them behind plaintiff's back, but plaintiff resisted. (*Id.* at 70–71.) At that moment, one of plaintiff's legs "gave way," and plaintiff fell against Worley and grabbed Worley's shoulder as he fell. (*Id.* at 71–72.) Plaintiff's right leg had been bitten by a brown recluse spider in 1997, and he had experienced continuing problems with his right leg as a result of that injury, which had severely weakened his leg. (*Id.* at 72–73.)

When plaintiff fell against Worley and grabbed his shoulder, plaintiff inadvertently pulled Worley's microphone off his shoulder. (*Id.* at 73.) According to plaintiff, Worley then grabbed his baton, and began to beat plaintiff with the baton all over his arms and his head. (*Id.* at 73–74.) Plaintiff then put up his hands to stop Worley from hitting him on the head, because plaintiff was wearing glasses. (*Id.* at 74.) Plaintiff contends that Worley also began hitting him on the legs with the baton, and that he was "swinging it in all directions ... hitting me on my legs and on my arms and on my head and everywhere." (*Id.* at 75–76.) At some point, Worley drew back the baton and said "ooh ouch, something like that," and then went back to hitting plaintiff with the baton. (*Id.* at 81.) Plaintiff contends that Worley continued to beat him with the baton and, as he tried to defend himself against the beating, and tried to grab the baton to stop Worley from beating him, "the next thing I remember was two noises and burning all in my stomach," as plaintiff realized that he had been shot twice by Worley. (*Id.* at 80, 88.)

After plaintiff realized that Worley had shot him, he grabbed his side and dropped to his knees and said to Worley, "You didn't have to shoot me. You could have used your mace." (*Id.*) Then, according to plaintiff, he dropped to the floor, and as he was lying on the floor, policemen were all around him and one of them put a knee on plaintiff's head. (*Id.*) The officer that put his knee on plaintiff's head then proceeded to put handcuffs on plaintiff. (*Id.* at 86.) Soon afterwards, a female EMT arrived and told the officers to remove the handcuffs from plaintiff, which they did. (*Id.* at 89.) Plaintiff was then transported via ambulance to Kennestone Hospital, where he underwent surgery to treat his gunshot wounds. (*Id.* at 90.) Plaintiff was released from the hospital on March 15, 1999, when he was taken from the hospital back to jail, and was officially "booked" and fingerprinted in conjunction with his arrest for DUI. (*Id.* at 93.) Plaintiff contends that he has suffered the permanent loss of his kidneys, permanent loss of part of his small intestine, permanent scarring, and other grievous bodily injuries as a result of his gunshot wounds. (*See* Compl. at ¶ 17.)

Although the Court is required to view all facts and inferences in the light most favorable to plaintiff, it is important to note that Officer Worley's account of the events that transpired that night is quite different from that of plaintiff. According to Officer Worley, when he returned to the holding cell to take plaintiff to the intoximeter to test his blood alcohol level, plaintiff began moving towards the door to the holding cell screaming "No, no, I can't do this, no!" (SMF at ¶ 43; Worley Aff. at ¶ 45.) Worley then put his hand on plaintiff's chest to prevent plaintiff from leaving the holding cell and tried to calm plaintiff down by explaining that he was just going to take a test. (SMF at ¶ 44.) Worley then grabbed plaintiff's shoulder, and was

able to put one handcuff around plaintiff's left wrist, but before Worley was able to put a handcuff on plaintiff's other wrist, plaintiff began struggling with him, and then reached up and tore Worley's microphone off his shoulder so that he would be unable to call for assistance from other officers. (*Id.* at ¶ 47.)

Worley contends that plaintiff then grabbed Worley's service weapon, which was holstered in Worley's equipment belt, and unsnapped the holster. (*Id.* at ¶ 47.) When plaintiff began tugging on Worley's service weapon to extract it from its holster, Worley let go of plaintiff's left hand and put both of his hands on plaintiff's right hand which had seized Worley's pistol. (*Id.* at ¶ 48.) Throughout this struggle, Worley contends that plaintiff repeatedly struck Worley in the chest, scratched his face, and tried to gouge Worley's eyes. (*Id.* at ¶ 49.) Worley shouted out for assistance from other officers, but his calls were unheeded because there were no other officers nearby. (*Id.* at ¶ 50.) By this time, plaintiff and Worley had moved out of the holding cell and were into a foyer area of the hallway leading out of the precinct. (*Id.* at ¶ 51.) Worley reached down to retrieve his microphone and radioed a signal 63, which was the code for an officer needing assistance. (*Id.* at ¶ 52.)

Worley then tried to spin away from plaintiff, but was either pushed or fell to the floor face down, at which time plaintiff removed Worley's baton from his equipment belt and expanded it. (*Id.* at ¶ 53.) According to Worley, plaintiff then straddled Worley, took the baton and raised it above his head, and aimed it for Worley's head; as Worley raised his hands to defend himself, plaintiff struck Worley's arm three times with the baton. (*Id.* at ¶ 55.) As plaintiff raised the baton again to strike Worley, Worley rolled over onto his side, drew his service weapon which plaintiff had already unsnapped from its holster, and fired three shots in quick succession at plaintiff. (*Id.* at ¶ 58.) Worley contends that he shot plaintiff because he feared for his life, as he was concerned that plaintiff was trying to knock him unconscious so that he could grab Worley's service weapon to kill him. (*Id.* at ¶¶ 57–58.) After Worley shot plaintiff, plaintiff stumbled backwards and fell, and Worley held him at gunpoint until another CCPD officer arrived to assist him. (*Id.* at ¶ 59.)

As a result of the shooting at issue in this action, consistent with CCPD policy, the CCPD conducted an Internal Affairs investigation into Officer Worley's actions. (*Id.* at ¶ 67.) The investigation involved a determination of whether Worley used an appropriate level of force against plaintiff. The Department Code of Conduct regarding the Use of Force states that "Officers shall not use more force in any situation than is reasonable under the circumstances. Force shall be used in accordance with the law and Department Policy." (*Id.* at ¶ 67.) Lt. S.O. Melton was the officer handling the Internal Affairs Investigation. (*Id.* at ¶ 68.) As a part of this investigation, he obtained a taped interview of Officer Worley, which statement was transcribed and made part of the Internal Affairs Investigative File. (*Id.*)

In addition to the Internal Affairs Investigation, there was an incident investigation conducted by the Crimes Against Persons Division, which investigation was conducted by Detective B.L. Mcentyre and Detective Lt. B.J. Banks. (*Id.* at ¶ 69.) This case file contained transcribed statements, and synopses of statements, taken not only from the officer questioned by Internal Affairs, but also of other CCPD officers involved in the incident as well as their field reports and other documents. (*Id.* at ¶ 69.) The case file generated by

this investigation was submitted to Internal Affairs and made a part of the Internal Affairs case file. (*Id.* at ¶ 69.)

As a result of the Internal Affairs investigation, the Office of Professional Standards concluded that the use of force by Officer Worley against plaintiff was within the bounds of the Departmental Policy and Code of Conduct, and that Officer Worley's use of force was therefore justified. (*Id.* at ¶ 71.) The Chief of the CCPD, Lee New, also independently reviewed the file from the Internal Affairs investigation and came to the same conclusion as the Office of Professional Standards: that Worley's use of force was appropriate and not excessive under the circumstances. (*Id.* at ¶ 71.)

Although plaintiff does not dispute that the CCPD conducted an investigation, he contends that he was never interviewed in conjunction with the investigation, because he was in intensive care being treated for his injuries during the entire course of the investigation. (Pl. SMF at ¶¶ 68–71.) He further contends that Cobb County has a policy or custom of failing to properly train its officers in the use of deadly force against persons suspected of misdemeanors, and that the county also has a policy or custom of failing to investigate fully into allegations of misconduct by officers and to discipline officers accordingly for excessive use of force. (*See* Compl. at ¶¶ 26–27.) Cobb County disputes these allegations, and contends that it takes complaints of excessive force seriously, and that it does not tolerate misconduct by officers. (SMF at ¶¶ 74, 75, 79.)

Plaintiff filed the instant action on October 29, 1999, alleging that Officer Worley and Cobb County violated his constitutional rights when Officer Worley shot him on the night of January 29, 1999, and that Officer Worley also committed an unlawful assault and battery against him. Defen-

dants thereafter filed a motion for summary judgment on all of plaintiff's claims, which motion is currently pending before the Court. Further relevant facts are set out in the Court's discussion below.

## DISCUSSION

### I. *Summary Judgment Standard*

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure *mandates* the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of *every* element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. 2548.

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323, 106 S.Ct. 2548; *Apcoa, Inc. v. Fidelity Nat'l Bank,* 906 F.2d 610, 611 (11th Cir.1990). The movant is not required to negate his opponent's claim, however. The movant may discharge his burden by merely " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. After the movant has carried his burden, the nonmoving party is then required to "go beyond the pleadings" and present competent evidence, including affidavit and deposition testimony, answers to interrogatories, and other such evidence, designating " 'specific facts showing that there

is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548 (quoting FED. R. CIV. P. 56(e)). While the court is to view all evidence and factual inferences in a light most favorable to the nonmoving party, *Samples v. City of Atlanta,* 846 F.2d 1328, 1330 (11th Cir.1988), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis added).

A fact is material when it is identified as such by the controlling substantive law. *Id.* at 248, 106 S.Ct. 2505. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249–50, 106 S.Ct. 2505. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505. Thus, to survive a motion for summary judgment, the nonmoving party must come forward with specific evidence of *every* element material to that party's

case so as to create a genuine issue for trial.

## II. *Plaintiff's Section 1983 Claim Against Officer Worley*

Plaintiff has asserted a claim under 42 U.S.C. § 1983 ("Section 1983") against both Cobb County and Officer Worley in his individual capacity,[1] arguing that his rights under the Fourth and Fourteenth Amendments were violated when Officer Worley beat him with a baton and shot him without sufficient provocation. 42 U.S.C. § 1983 provides, in relevant part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Thus, in order to establish a claim under Section 1983, plaintiff must show a violation of a right secured by the Constitution of the United States, and also that the deprivation of that right was committed by a person acting under color of state law. *Cummings v. DeKalb County,* 24 F.3d 1349 (11th Cir.1994); *see also Graham v. Connor,* 490 U.S. 386, 393–394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (" § 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere

---

1. Plaintiff has asserted these claims against Officer Worley solely in his individual capacity and not his official capacity. In any event, a suit against Officer Worley in his official capacity would have been merely duplicative of plaintiff's claims against Cobb County directly, and would have likely been dismissed

on that ground. *See, e.g., Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114, (1985) (citing *Monell v. New York City Dept. of Soc. Serv.,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611, (1978)); *Yeldell v. Cooper Green Hosp., Inc.,* 956 F.2d 1056, 1060 (11th Cir.1992).

conferred") (internal quotes omitted) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)).

Plaintiff claims that Officer Worley and Cobb County subjected him to excessive force, unnecessary infliction of pain, and a wrongful seizure in violation of the Fourth and Fourteenth Amendments. Defendants have moved for summary judgment with respect to the claims against defendant Worley in his individual capacity on the grounds that plaintiff has failed to present sufficient evidence that Officer Worley subjected·him to excessive force, unnecessary infliction of pain, or an unlawful seizure, and also that Worley is entitled to the defense of qualified immunity.

**A. Potential Constitutional Rights Infringed When An Officer Uses Excessive Force**

**1. Parties' Contentions**

Plaintiff's claim against Officer Worley can be fairly characterized as a claim for "excessive force." Because the Constitution does not specifically prohibit "excessive force" by a police officer, however, the validity of a claim for excessive force must be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized "excessive force" standard. *Graham*, 109 S.Ct. at 1871.

In the Complaint, plaintiff alleges that Officer Worley's actions deprived him of his constitutional rights under both the Fourth and the Fourteenth Amendments to the United States Constitution. Defendants have assumed in their motion for summary judgment that the Fourth Amendment supplies the proper analysis

of plaintiff's claims, and that his claim is properly viewed as a claim for an "unreasonable seizure," as prohibited by the Fourth Amendment. *(See* Defs.' Br. at 1–3.) Defendants then address plaintiff's claim by citing cases in which officers used allegedly excessive force in effecting the arrests of persons suspected of criminal activity.

In his response to defendants' motion for summary judgment, plaintiff does not address the specific constitutional right that he alleges was violated by Officer Worley, but instead asserts that "it is clear that the established law·in both state and federal jurisdictions in Georgia is that an officer is not permitted to shoot a misdemeanant who flees from him when about to be arrested." (Pl.'s Br. at· 7.) [2] He·does not explain exactly what provision in the United States Constitution actually prohibits such conduct by a police officer, however. Moreover, in support of his claims, he cites not to federal cases, but to Georgia cases interpreting Georgia statutory law regarding the appropriate use of force by police officers, which cases have no bearing on whether such force is permissible under the federal Constitution. In sum, both parties have assumed in their respective briefs that there is a generic standard for "excessive force" claims that arise under Section 1983, a notion that has been explicitly rejected by the United States Supreme Court. *Graham*, 490 U.S. at 393–394, 109 S.Ct. 1865.

As noted above, Section 1983 provides no substantive rights, but merely provides "a method for vindicating federal rights elsewhere conferred." *Graham*, 490 U.S. at 394, 109 S.Ct. 1865; *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). Although plaintiff as-

---

**2.** Plaintiff failed to number the pages of his brief in response to defendants' motion for summary judgment, in violation of Local Rule

5.1D, NDGa. The excerpt quoted above was taken from the seventh unnumbered page.

serts in his Complaint that his rights under both the Fourth Amendment and the Fourteenth Amendment were violated, neither party has discussed the standards applicable to claims arising under the latter amendment. Moreover, although defendants assume that the standards for an "unreasonable seizure" under the Fourth Amendment apply, neither party has presented the Court with any authority holding that the Fourth Amendment prohibits the use of excessive force by a police officer against a person who has already been lawfully arrested and taken into custody. Accordingly, to determine what standard governs Officer Worley's conduct, the Court must attempt to identify which constitutional provision potentially applies to the conduct at issue here. Further, to insure that this undertaking is not merely semantical, the Court must also determine whether there is any meaningful difference in the standards when applied to the conduct in this case.

## 2. Standards for Evaluating Conduct That Allegedly Violates the Fourth, Eighth, or Fourteenth Amendments

There are three potential constitutional provisions that are implicated when a police or correctional officer uses excessive force against a person whom he is attempting to arrest or a person who is already in custody: (1) the Fourth Amendment, which prohibits unreasonable seizures, (2) the Eighth Amendment, which prohibits cruel and unusual punishment, and (3) the Fourteenth Amendment, which affords individuals the right to due process under the law.

■ As to the particular standards implicated by each provision, the Fourth Amendment prohibits unreasonable searches and seizures. Hence, when a plaintiff alleges excessive force by an officer in the course of executing an arrest or a search and seizure, he must show that the officer's conduct was objectively "unreasonable" in order to prevail on this kind of claim. *Graham v. Connor,* 490 U.S. 386, 395–97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Such a test looks not to the motivation of the particular officer, but instead examines whether a reasonable officer would have taken the same action. *Id.* at 397, 109 S.Ct. 1865. Application of the Fourth Amendment to excessive force claims requires attention to the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of others, and whether he is actively resisting arrest or attempting to evade arrest. *Id.* at 396, 109 S.Ct. 1865. Finally, the "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–397, 109 S.Ct. 1865.

■ With regard to the Eighth Amendment's proscription of cruel and unusual punishment, the latter "prohibits the unnecessary and wanton infliction of pain, or the infliction of pain totally without penological justification." *Ort v. White,* 813 F.2d 318, 321 (11th Cir.1987); *see also Rhodes v. Chapman,* 452 U.S. 337, 346, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). "After incarceration, only the "'unnecessary and wanton infliction of pain'" ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Ingraham v. Wright,* 430 U.S. 651, 670, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976))). Further, where prison security measures are undertaken

to resolve a disturbance, the question of whether the chosen course of action inflicted unnecessary and wanton pain and suffering turns on "whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley*, 475 U.S. at 320–21, 106 S.Ct. 1078 (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.1973), *rejected in part by Graham*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443).[3] Stated another way, cruel and unusual punishment is applied maliciously and sadistically to cause harm; such conduct shocks the conscience, involves the unnecessary and wanton infliction of pain, and is grossly disproportionate to the offense for which it was imposed. *Telfair v. Gilberg*, 868 F.Supp. 1396, 1403, 1409 (S.D.Ga.1994).

▆ Finally, the substantive prong of the Fourteenth Amendment gives an individual who is in custody the right to be protected from the infliction of physical force that is wanton, arbitrary, or intended to punish. *Telfair*, 868 F.Supp. at 1403. The Supreme Court has held that, in the context of prison security, the Due Process Clause of the Fourteenth Amendment does not afford a convicted prisoner any greater protection than would the Cruel and Unusual Punishments Clause of the Eighth Amendment. "It would indeed be surprising if, in the context of forceful prison security measures, the conduct that shocks the conscience or afford[s] brutality the cloak of law, and so violates the Fourteenth Amendment, were not also punishment inconsistent with contemporary standards of decency and repugnant to the conscience of mankind, in violation of the Eighth." *Whitley*, 475 U.S. at 327, 106 S.Ct. 1078 (citations and internal quotes omitted).

Protection that the substantive prong of the Due Process Clause provides to convicted prisoners with regard to excessive force therefore overlaps with that same protection provided to these individuals by the Eighth Amendment. With regard to non-convicted inmates, such as pretrial detainees, however, delineation of the precise contours of the protection offered by the Fourteenth Amendment is not easy. In a conditions of confinement case, the Supreme Court has noted that the difference between application of the Eighth Amendment to convicted persons and of the Fourteenth Amendment to pretrial detainees is that the former may be punished as long as the punishment is not cruel and unusual; whereas the latter may not be punished at all as he has not yet been convicted. *Bell v. Wolfish*, 441 U.S. 520, 535–36 n. 16, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

In *Telfair v. Gilberg*, 868 F.Supp. 1396 (S.D.Ga.1994), the Honorable Avant Edenfield, Southern District of Georgia, has issued a learned opinion that sets out some of the tortured history of the application of this amendment to excessive force claims. *Telfair* notes that the seminal case in application of the Fourteen Amendment to excessive force claims brought by pretrial detainees is the oft-quoted decision: *Johnson v. Glick*, 481 F.2d 1028 (2nd Cir.1973). In *Johnson*, Judge Friendly, addressing a

---

**3.** When dealing with cases of prison discipline, the Court is careful to consider

> the distinction between, on the one hand, "punishment" in the strict sense and, on the other hand, immediately necessary coercive measures undertaken to obtain compliance with a reasonable prison rule or regulation. Punishment in the strict sense involves a penalty which is deliberately administered after reflection and evaluation in response to conduct occurring in the past .... Punishment in this sense is not designed to bring an ongoing violation to a halt.

*Ort*, 813 F.2d at 322.

claim by a pretrial detainee that a guard had beaten him, noted that such a claim did not "lie comfortably within the Eighth Amendment." *Telfair*, 868 F.Supp. at 1405 (quoting *Johnson*, 481 F.2d at 1031). Instead, Judge Friendly found the substantive due process prong of the Fourteenth Amendment to supply the appropriate constitutional hook. Further, noting the desirability of protecting the innocent at least as much as the convicted, Judge Friendly attempted to divine a standard that would meet or exceed the Eighth Amendment test. *Id.* Importing tort law principles, he arrived at the following standard:

> In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

*Telfair*, 868 F.Supp. at 1405 (quoting *Johnson*, 481 F.2d at 1033). Judge Edenfield further notes that, even though Judge Friendly had been purposely crafting a Fourteenth Amendment test, the Supreme Court thereafter quoted the above standard with approval in *Whitley*, 475 U.S. at 321–21, 106 S.Ct. 1078, an Eighth Amendment case.

Interestingly, Judge Friendly's Fourteenth Amendment test, minus the requirement of a malicious and sadistic intent by the officer, is essentially the same test endorsed by the Supreme Court for use in determining whether an officer's force has contravened the Fourth Amendment's prohibition against unreasonableness. *Graham*, 490 U.S. at 397–98, 109 S.Ct. 1865; *Nolin v. Isbell*, 207 F.3d 1253, 1256 n. 2 (11th Cir.2000). The Graham

Court reiterated, however, that the subjective motivation of the officer, including any maliciousness or sadism behind his use of force, is of central importance in deciding whether the force used violated the Eighth Amendment. 490 U.S. at 398, 109 S.Ct. 1865. Unfortunately for this Court, which must arrive at a workable standard for the Fourteenth Amendment to apply to this case, the Graham court did not indicate whether the Friendly test still remains as the viable test for Fourteenth Amendment claims.

Accordingly, the Court will merge the above tests to conclude that, in the context of an excessive force claim, the Fourteenth Amendment prohibits conduct that is wanton, arbitrary, or intended to punish. Further, to evaluate whether Officer Worley's force violated plaintiff's Fourteenth Amendment rights, the Court must look to the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm. *But see Telfair v. Gilberg*, 868 F.Supp. at 1408–10, in which Judge Edenfield argues forcefully that the Due Process Clause should provide broader protection for pretrial detainees who are subjected to force than for convicted prisoners. To accomplish this goal, Judge Edenfield would still require a showing of an intent to punish by the officer, but would delete a requirement that the officer's motivation be sadistic or malicious. *Id.* at 1412.

In summary, then, the Fourth Amendment prohibits force that is objectively unreasonable, both in the decision to implement the force and in the degree of force. The Eighth Amendment prohibits force that shocks the conscience, involves

unnecessary and wanton infliction of pain, offends evolving notions of decency, or is grossly disproportionate to the offense for which imposed. With regard to convicted prisoners, the substantive due process prong of the Fourteenth Amendment is coextensive with the protections offered by the Eighth Amendment. With regard to pretrial detainees, however, the Fourteenth Amendment offers at least equal protection to that available under the Eighth Amendment, although the exact parameters of the former's protections have not been well-specified by case law. This Court concludes that the Fourteenth Amendment prohibits conduct that is wanton, arbitrary, or intended to punish and that the amendment *may* require a showing of a malicious or sadistic intent by the officer.

### 3. Which Amendment Applies In This Case?

█ It is clear that plaintiff cannot claim a violation of the Eighth Amendment as a result of any excessive force administered by Officer Worley, as the Eighth Amendment is applicable only to *convicted* prisoners. *Ingraham v. Wright,* 430 U.S. 651, 671–72 n. 40, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977).[4] In short, the Eighth Amendment's prohibition on cruel and unusual punishment applies only to those individuals actually convicted of a crime, not to pretrial detainees such as plaintiff. *See Whitley v. Albers,* 475 U.S. 312, 318, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986); *Ingraham,* 430 U.S. at 671–672, 97 S.Ct.

1401; *United States v. Myers,* 972 F.2d 1566, 1571 (11th Cir.1992).

The Due Process Clause, however, can provide the basis for a claim of excessive force by a pretrial detainee. In examining claims of pretrial detainees, the Supreme Court has upheld a lower court's reliance on the Due Process Clause, rather than the Eighth Amendment. *Bell v. Wolfish,* 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (citing *Ingraham,* 430 U.S. at 671–672 n. 40, 97 S.Ct. 1401). Noting the importance of this distinction, the Court stated: "Due process requires that a pretrial detainee not be punished. A sentenced inmate, on the other hand, may be punished, although that punishment may not be 'cruel and unusual' under the Eighth Amendment." *Id.* In Graham, the Supreme Court stated that "the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Graham,* 490 U.S. at 395 n. 10, 109 S.Ct. 1865; *see also Bell,* 441 U.S. at 535–39, 99 S.Ct. 1861; *Valencia v. Wiggins,* 981 F.2d 1440, 1445 (5th Cir.1993). The Eleventh Circuit has applied the Graham decision in holding that such claims by a pretrial detainee can clearly be based upon the Due Process Clause. *Wright v. Whiddon,* 951 F.2d 297, 300–01 (11th Cir.1992).

Accordingly, because plaintiff was a pretrial detainee, not a convicted person, at the time he was incarcerated, the Fourteenth Amendment, not the Eighth Amendment, creates a cause of action for any excessive force inflicted by Officer Worley. The question remains, however,

---

**4.** The *Ingraham* Court has stated that the Eighth Amendment analysis applies:

> only after the State has complied with constitutional guarantees traditionally associated with criminal prosecutions .... [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal

adjudication of guilt in accordance with the due process of law. *When the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.*

430 U.S. at 671–72 n. 40, 97 S.Ct. 1401 (emphasis added).

whether the Fourth Amendment also provides an independent cause of action for plaintiff. Of course, there is no point in answering this question unless the Fourth Amendment provides a different and more lenient standard for plaintiff than does the Fourteenth Amendment, as plaintiff clearly has an actionable claim under the latter. As a linguistic matter, the Fourth Amendment would appear to create an easier burden for the plaintiff, as the plaintiff must only show an *unreasonable* use of force by the officer to satisfy the prohibition of that provision. As noted, to prove a Due Process violation under the Fourteenth Amendment, the plaintiff must show that the conduct is *wanton, arbitrary, or intended to punish.* Further, as discussed *supra,* a plaintiff may also have to show a sadistic or malicious intent by the officer to prove a Due Process claim. Certainly, in theory, conduct that is unreasonable might not necessarily be wanton, arbitrary, or malicious. Thus, certain conduct might violate the Fourth Amendment, but not the Fourteenth. The converse— that conduct could be wanton and arbitrary, but not unreasonable—appears to be unlikely, if not logically impossible. As a practical matter, however, if the finder of fact in this case believes that Officer Worley shot plaintiff merely because he was angry that plaintiff had refused to be handcuffed, such force would appear to be both unreasonable as well as wanton and arbitrary. On the other hand, Officer Worley contends that he shot plaintiff not because the latter refused to be handcuffed, but because the plaintiff assaulted the officer, tore off his microphone so that he could not call for help, grabbed the officer's baton and struck him with it, and appeared to be attempting to grab the officer's service weapon when the latter shot the plaintiff. If the finder credits Officer Worley's testimony, then the lat-

ter's conduct would neither be unreasonable nor wanton and arbitrary.

Even if use of the Fourth Amendment standard might make a difference in this case, however, the Court concludes that its application would not be appropriate. First, although given the opportunity to so hold in past cases, neither the Supreme Court nor the Eleventh Circuit has ever held that the Fourth Amendment applies to excessive force inflicted on a pretrial detainee. In *Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Court readily concluded that the Fourth Amendment applies to claims that a police officer utilized excessive force in effecting the initial arrest of a suspect, because the arrest of a person constitutes a "seizure" for the purpose of the Fourth Amendment, and the deliberate use of excessive force in effecting that arrest amounts to an "unreasonable seizure" that is specifically prohibited by the Fourth Amendment. *Graham,* 490 U.S. at 394, 109 S.Ct. 1865. As the Supreme Court stated in *Graham v. Connor:*

> Where, as here, the excessive force claim arises in the context of an arrest or an investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right "to be secure in their persons ... against unreasonable seizures" of the person.

*Id.* The *Graham* Court also noted that the Due Process Clause of the Fourteenth Amendment protects a pretrial detainee against the use of excessive force, but it specifically left open the question of whether the Fourth Amendment continues to protect an individual against the deliberate use of excessive force *after* he has been lawfully arrested and taken into custody:

A "seizure" triggering the Fourth Amendment's protections occurs only when government actors have, by means of physical force or show of authority, ... in some way restrained the liberty of a citizen .... *Our cases have not resolved the question whether the Fourth Amendment continues to provide individuals with protection against the deliberate use of excessive physical force beyond the point at which arrest ends and pretrial detention begins, and we do not attempt to answer that question today.* It is clear, however, that the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment.

*Id.* at 395 n. 10, 109 S.Ct. 1865 (emphasis added).

Thus, the Supreme Court has never held that the Fourth Amendment creates a cause of action for claims of excessive force administered after arrest, while the plaintiff is a pretrial detainee. The Eleventh Circuit has likewise never so held and, in fact, has explicitly left the question open. In *Wright v. Whiddon,* 951 F.2d 297 (11th Cir.1992), the detainee, who had been arrested for armed robbery and who was taken to the courthouse for a probation revocation hearing, escaped custody. The detainee, who was known to have attempted escapes from police custody in the past, had been left, without shackles or restraints, in the sole custody of an unarmed 71–year–old bailiff. The detainee thereupon walked out of the courthouse. In attempting to capture him, police officers chased him into an alley and, when it appeared that he might elude capture, a police officer shot and killed him, notwithstanding the fact that the detainee was unarmed and appeared to pose no danger to others. *Id.* at 298. The detainee's parents brought an action under Section 1983, alleging that the police officer violated

Wright's Fourth Amendment right to be free from unreasonable seizures. *Id.*

On appeal, the Eleventh Circuit reversed the district court's denial of qualified immunity to the defendants, noting that after the Supreme Court's decisions in *Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), and *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), it remained an "open" question whether pretrial detainees such as Wright could assert claims for excessive force arising solely under the Fourth Amendment. *Wright,* 951 F.2d at 300. Bolstering its conclusion that the question had not been resolved, the panel cited decisions from other circuits that had also found that the question remained undecided. *Id.* (citing *Hammer v. Gross,* 932 F.2d 842, 845 n. 1 (9th Cir.1991) ("it may be questioned whether the Fourth Amendment still controls when the seizure or arrest ripens into detention"); *United States v. Cobb,* 905 F.2d 784, 788 n. 7 (4th Cir.1990) ("The Supreme Court left unresolved in *Graham* whether and to what extent the protections of the Fourth Amendment may extend to pretrial detainees. There is no need for us to reach this difficult question."); *Wisniewski v. Kennard,* 901 F.2d 1276, 1277 (5th Cir.1990) (failing to reach "difficult issue [ ]" of "whether liability should be measured ... by the standards of the fourth amendment or substantive due process" in case charging excessive force used after apprehending an escaped prisoner)).

The Wright court also left the question open, and concluded that the Supreme Court might decide the question either way: On the one hand, it reasoned, the Supreme Court could find that once a pretrial detainee attempts escape, the detainee is analogous to a fleeing suspect and thus is protected by the Fourth Amendment. Conversely, it noted, the Supreme

Court could also find that, once a suspect has been arrested initially, he has already been "seized"; therefore, a police officer's attempt to capture him during a subsequent escape attempt does not become yet another "seizure" implicating the Fourth Amendment, and a claim for excessive force by such a fleeing detainee is subject to analysis only under the Due Process Clause. *Wright*, 951 F.2d at 300. As a result of this uncertainty, the Wright court concluded that the law was not "clearly established" that the use of excessive force in attempting to capture a fleeing suspect was a violation of a pretrial detainee's Fourth Amendment rights. Id. Accordingly, the court concluded that the police officer who shot Wright was entitled to qualified immunity on the plaintiffs' claims that the officer violated Wright's Fourth Amendment rights when he shot and killed him. *Id.* at 301.

Although the *Wright* court concluded that the officer was entitled to qualified immunity on the plaintiffs' Fourth Amendment claim, the court went on to state:

> Our decision today does not mean that police can shoot fleeing pretrial detainees with impunity. *At a minimum, "it is clear ... that the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment."* [5]

*Id.* (citing *Graham*, 490 U.S. at 395 n. 10, 109 S.Ct. 1865 (emphasis added)).

Similarly, in *Vineyard v. County of Murray*, 990 F.2d 1207, 1211 (11th Cir. 1993), the Eleventh Circuit noted that it is unclear whether a pretrial detainee's claim of excessive force states a cause of action under the Fourth Amendment. The panel reiterated, however, that a pretrial detainee may bring a Section 1983 action under the Fourteenth Amendment, which "protects a pretrial detainee from the use of excessive force that amounts to punishment." *Id.* at 1211 (citing *Graham*, 490 U.S. at 395 n. 10, 109 S.Ct. 1865).

■ In the instant action, plaintiff was a pretrial detainee when the violent interaction between him and defendant Worley occurred. The fact that neither the Eleventh Circuit nor the Supreme Court has held that the Fourth Amendment creates a cause of action for a pretrial detainee complaining of excessive force compels denial of plaintiff's Fourth Amendment claim. That is, an individual [6] cannot be held liable for an infringement of another's constitutional rights unless the law has been clearly established by the United States Supreme Court, the Eleventh Circuit, or the highest court of the state. *See* discussion of qualified immunity, *infra* at 1340 – 1341. Accordingly, plaintiff can not base a claim of excessive force on the Fourth Amendment.

■ As a pretrial detainee, however, plaintiff may sue under the Fourteenth Amendment. Further, although the defendants vigorously dispute plaintiff's ver-

---

**5.** Unfortunately for the Wright family, however, they had failed to assert any claim that the police officer violated Wright's substantive due process rights under the Fourteenth Amendment. 951 F.2d at 301.

**6.** Defendant Cobb County cannot avail itself of a defense of qualified immunity. Therefore, the absence of any clearly established law providing that excessive force against a pretrial detainee constitutes a Fourth Amend-

ment violation would not decide the comparable claim against Cobb County, if this court were to decide that, indeed, the Fourth Amendment does create such a cause of action. Yet, as discussed *infra* at 1343 – 1345, Cobb County is not liable for independent reasons. Accordingly, the Court likewise does not have to decide the Fourth Amendment question in order to determine the liability of defendant Cobb County.

sion of the facts,[7] this Court must take the facts in the light most favorable to plaintiff. Plaintiff contends that he never tried to grab Officer Worley's gun, that he did not grab Officer Worley's baton, except once in a defensive effort he attempted to stop Worley from hitting him with the baton, and that he never ever hit Officer Worley with the baton. Plaintiff contends that he accidentally fell against Worley, and Worley reacted by hitting plaintiff repeatedly with his baton, and then pulling out his gun and shooting plaintiff twice in the abdomen. According to plaintiff, when Worley shot him, he knew that plaintiff was unarmed and had no reason to fear that plaintiff presented any threat to him of any kind.

Under these facts as presented by plaintiff, the Court concludes that plaintiff has presented sufficient evidence to establish a genuine issue of material fact as to whether defendant Worley's conduct was wanton, arbitrary, and designed to inflict punishment. Indeed, if the facts are as plaintiff has presented them, he has likewise presented a question of fact as to whether defendant Worley acted out of a malicious or sadistic motivation. Accordingly, plaintiff has stated a cause of action under the Fourteenth Amendment. In the next section, the Court will determine, however, whether the defendants have viable defenses to plaintiff's otherwise cognizable claim under the Fourteenth Amendment.

## B. Officer Worley's Defense of Qualified Immunity

■ Officer Worley has asserted the defense of qualified immunity to plaintiff's Section 1983 claims against him in his individual capacity. "Qualified immunity protects government officials performing discretionary functions from civil trials (and the other burdens of litigation, including discovery) and from liability if their conduct violates no 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Lassiter v. Alabama A & M Univ., Bd. of Trs.*, 28 F.3d 1146, 1149 (11th Cir.1994) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "For the law to be clearly established to the point that qualified immunity does not apply, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place that 'what he is doing' violates federal law." *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). Once the defendant makes this showing, "the burden is on the plaintiff to show that, when the defendant acted, the law established the contours of a right so clearly that a reasonable official would have understood his acts were unlawful." *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir.1993), *modified*, 14 F.3d 583 (1994). Accordingly, there is a two-prong test to determine if qualified immunity applies: (1) was the defendant performing a

---

7. Indeed, the thrust of defendants' defense is that plaintiff is lying, while defendant Worley has testified truthfully in explaining that he shot plaintiff only because plaintiff had attempted to take Officer Worley's gun out if its holster, because plaintiff had grabbed the officer's baton and was beating him with it, and because Officer Worley reasonably feared for his life. (*See* Defs.' Br. at 4–5.) The Court recognizes that defendant Worley's account may be altogether truthful. Nevertheless, as defendants repeatedly make these factual arguments in support of their motions for summary judgment, the Court reminds defendants that the Court must take the facts in the light most favorable to the plaintiff and it implores defendants, in the future, to stop wasting the Court's time with arguments that have no chance of success.

discretionary function when he committed the acts at issue in this case and (2) did defendant's actions violate "clearly established law?"

As to the first inquiry, it is undisputed that Officer Worley was performing a discretionary function when he was attempting to restrain plaintiff in this case. Since "[t]here is no doubt in the present case that the officers were acting within their discretionary authority, ... the sole issue is whether their actions violated clearly established law." *Hartsfield v. Lemacks*, 50 F.3d 950, 953 (11th Cir.1995). The burden is on the plaintiff to show that the defendants violated clearly established law. *Id.* Plaintiff can not discharge this burden "simply by referring to general rules or abstract rights" but, rather, must point to clearly established law. *Id.* at 954. "When considering whether the law applicable to certain facts is clearly established, the facts of the cases relied upon as precedent are important. The facts need not be the same as the facts of the immediate case. But they do need to be materially similar." *Adams v. St. Lucie Co. Sheriff's Dept.*, 962 F.2d 1563, 1575 (11th Cir.1992) (Edmonson, J., dissenting), *approved en banc*, 998 F.2d 923 (11th Cir.1993). To be clearly established, however, "does not mean that a court must have previously found the very action in question to be unlawful, but it does mean that 'in light of preexisting law the unlawfulness must be apparent.'" *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir.1994) (quoting *Anderson*, 483 U.S. at 640, 107 S.Ct. 3034).

The qualified immunity question presented in this case is whether the law was "clearly established" that the actions of Officer Worley in beating plaintiff with his baton, and then shooting plaintiff twice in the abdomen, were a violation of plaintiff's constitutional rights. For law to be clearly established, it must have been in effect at the time of the alleged unconstitutional conduct. "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." *Jenkins v. Talladega City Bd. of Educ.*, 115 F.3d 821, 827 n. 4 (11th Cir.1997); *see also Vaughan v. Cox*, 264 F.3d 1027, 1036–37 (11th Cir. 2001) (citing *Hamilton v. Cannon*, 80 F.3d 1525, 1532 n. 7 (11th Cir.1996)).

Thus, in order for plaintiff to defeat Worley's defense of qualified immunity, he must point to "clearly established" law that the actions taken by Officer Worley on the night of January 29, 1999, violated plaintiff's constitutional rights. As to the Fourth Amendment claim, the Court has previously noted that the law has not been clearly established that the use of excessive force against a pretrial detainee would implicate rights under that amendment. As to the Fourteenth Amendment, however, the law was clearly established in January, 1999, that the use of excessive force on a pretrial detainee could potentially trigger a substantive due process claim. *Vineyard v. Murray Cty.*, 990 F.2d 1207, 1211 (11th Cir.1993); *Wright v. Whiddon*, 951 F.2d 297, 301 (11th Cir.1992); *see* discussion *supra* at 1335 – 1336.

 The question before the Court on a qualified immunity analysis, however, is not whether a reasonable police officer would know that his conduct *might* contravene the due process clause, but whether the officer would know that his conduct *did* violate this constitutional provision. As noted, a plaintiff can not impute knowledge to an officer merely by referring to general rules or abstract rights, but instead must point to clearly established law. Unfortunately for a reviewing court, the guarantee of substantive due process, in this context, is about as abstract and gen-

eral a right as one will find in any Section 1983 case law. Moreover, when considering whether the law applicable to certain facts is clearly established, the facts of the cases relied upon as precedent are crucial. Although the facts need not be the same as the facts of the immediate case, they need to be materially similar. This Court's task is made more difficult by the fact that there are few applicable cases on which to rely.

In *Gilmere v. City of Atlanta,* 774 F.2d 1495 (11th Cir.1985) *(en banc),* the police had been called to control a confrontation between two drivers after a near accident; specifically, the other motorist had indicated that the plaintiff had pulled a gun from this car and was threatening the other motorist. *Id.,* 774 F.2d at 1496–97. The plaintiff resisted the officers' efforts to take him to the patrol car, after which the officers became more forceful and began beating plaintiff around the head. Plaintiff then broke free, a scuffle ensured, and one officer shot and killed plaintiff.

In a fractured opinion, the Eleventh Circuit concluded that the plaintiff had stated a claim on Fourth Amendment grounds, but the majority of judges did not concur in that part of the "majority" opinion holding that plaintiff had stated a Fourteenth Amendment claim. Nevertheless, this Court concludes that the other judges would likely agree with the "majority" opinion's broad statements about the standards for applying such a right in an appropriate case where the right was properly implicated. That "majority" opinion, authored by Judge Vance, noted that the substantive due process clause provided that certain governmental conduct is so egregious that it would remain unjustified even if accompanied by the most stringent procedural safeguards. *Id.* at 1500. The opinion further noted that substantive due process is violated by actions that "offend those canons of decency and fairness which express the notions of justice of English-speaking people even toward those charged with the most heinous offenses." *Id.* (citations omitted).

Noting that case law has not specifically formulated the standards for such a right, the majority opinion stated that the Supreme Court has indicated that this right is violated by conduct that "shocks the conscience" or constitutes brutal force that would "offend even hardened sensibilities." *Id.* (citations omitted). The opinion also noted that those violations that give rise to substantive due process claims are necessarily more egregious than those that give rise to simple tort actions. *Id.* at 1500. Finally, the opinion quoted the oft-quoted opinion of Judge Friendly in *Johnson v. Glick,* 481 F.2d 1028, 1033 (2nd Cir.1973) in which the judge noted that, to determine when the constitutional line has been crossed:

> a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

*Gilmere,* 774 F.2d at 1500–01 (quoting *Johnson,* 481 F.2d at 1033).

Clearly, there is little in the above language to allow an officer to distinguish specifically between that conduct which shocks the conscience and that conduct which only stings the conscience a bit. Moreover, the Eleventh Circuit cases that have given more concrete substance to a substantive due process violation arising out alleged excessive force appear to be

few in number.[8] In a recent case, the Eleventh Circuit has noted that, in an excessive force claim based on the need for police officer to make quick judgments about the proper course of action when exigent circumstances do not permit deliberation, even a showing of recklessness is insufficient to support a substantive due process claim. Rather, a court will find a violation of substantive due process only when the plaintiff can show that the officer had "a purpose to cause harm unrelated to the legitimate object of arrest." *Vaughan v. Cox,* 264 F.3d 1027, 1037–38 (11th Cir. 2001) (quoting *County of Sacramento v. Lewis,* 523 U.S. 833, 836, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)).

Finally, leaving aside the fractured *Gilmere* decision, the Court has identified only one case that has found a substantive due process violation as a result of an excessive force claim, but reliance on that case is likewise problematic. In *McKinney v. DeKalb County,* 997 F.2d 1440, 1442 (11th Cir.1993), the police had responded to a 911 call in which the caller's teenage son, the plaintiff, was holed up in his room with a butcher knife and a stick. Responding to the call, one of the officers ultimately shot and seriously injured the plaintiff. The facts were disputed, but the plaintiff's assertion was that the officer shot plaintiff after the plaintiff had put his knife down and when he was not threatening the safety of any other person. *Id.* at 1443. The plaintiff asserted both a Fourteenth Amendment substantive due process claim and a Fourth Amendment excessive force claim. *Id.* at 1442.

In this pre-*Lassiter* case, the panel rejected the defendant's appeal of the denial of qualified immunity by the district court, simply noting that the law was clearly established by *Gilmere* that police use of excessive force is a constitutional violation. It is a fair inference from the opinion that the panel concluded that when an officer shoots a suspect who has put his weapon down and is no longer threatening the officer, the officer has unconstitutionally inflicted excessive force. The problem in relying on this case too strongly here, however, is that the panel did not differentiate between a Fourth Amendment claim and a Fourteenth Amendment claim. As the Fourth Amendment is the constitutional provision applicable to the level of force exerted during the arrest of a suspect, it is reasonable to infer that the panel was tacitly contemplating a Fourth Amendment claim. As noted, however, it is still unsettled whether the Fourth Amendment is applicable to a pretrial detainee. Accordingly, *McKinney* arguably can not be read as necessarily recognizing a factual pattern that will in all cases be sufficient to trigger a valid claim of excessive force brought under the Fourteenth Amendment. On the other hand, the panel decision upheld the district court's denial of summary judgment on both the Fourth *and* Fourteenth Amendment claims. This outcome, therefore, reasonably suggests that the panel concluded that the conduct in question—shooting an unarmed individual who was threatening no violence—constitutes a violation of the Fourteenth Amendment.

---

**8.** Again, as the parties have not focused on the Fourteenth Amendment claim, although it is part of the plaintiff's claim, the Court has had to engage in its own research to attempt to answer this question. Another source of case law that might be informative is Eighth Amendment case law, because, as discussed *supra,* a pretrial detainee has at least as much right to be free from excessive force as does a convicted prisoner. *See* discussion *supra* at 1333 – 1334. Out of consideration for its own resources, the Court has declined to conduct research for the plaintiff to determine whether there are factually similar Eighth Amendment cases.

The Court then is left with the Eleventh Circuit's most recent pronouncement in *Vaughan*, stated above, that a substantive due process violation is established in an excessive force context when the officer had "a purpose to cause harm unrelated to the legitimate object of arrest." [9] *Vaughan*, 264 F.3d 1027, 1037–38. Taking the facts in the light most favorable to the plaintiff, this Court concludes that notwithstanding a detainee's unwillingness to be handcuffed, as long as that detainee is not endangering the safety of the officer, the officer crosses the constitutional line set out by the substantive due process clause when he shoots that detainee, because, with that action, the officer has engaged in "a purpose to cause harm unrelated to the need to [handcuff] the detainee." As this general standard was set out by the Supreme Court in 1998 in *Sacramento*, prior to plaintiff's arrest in 1999, the Court concludes that Officer Worley was on notice of this standard. Likewise, at a minimum, case law put Officer Worley on notice that he could not inflict punishment on a detainee out of malicious or sadistic motivation. If Worley acted as plaintiff suggests, he would necessarily be aware that his conduct was malicious or sadistic.

Admittedly, leaving *McKinney* aside, there does not seem to be a case on all fours with the scenario and constitutional claim presented here. Indeed, Eleventh Circuit case law indicates that cases with sufficiently similar facts are typically necessary to overcome a defense of qualified immunity. Yet, some facts are egregious enough on their own to implicate, by necessity, the prohibition set out in a particular standard of conduct. If, for example, an officer caused a detainee's death by forcing the latter to play Russian roulette, no court would have any difficulty concluding that the officer had violated the detainee's substantive due process rights, even if there were no case on point. Accordingly, the Court concludes that Officer Worley does not enjoy qualified immunity for shooting [10] the plaintiff if plaintiff can, in fact, prove the truth of the account he has presented to this Court.[11]

9. In *Vaughan*, the panel rejected the plaintiff's substantive due process claim based on a high-speed chase in which the officers finally shot at the fleeing vehicle and seriously wounded a passenger, on the ground that the plaintiff had failed to present any evidence that the officer was motivated by anything other than a desire to arrest the fleeing suspects. *Vaughan*, 264 F.3d 1027, 1037–38.

10. The Court determines only that defendant Worley is not entitled to a defense of qualified immunity for the shooting of plaintiff; it does not address the question whether defendant would be entitled to immunity if the only act complained of was his beating of the plaintiff with the baton. As to the shooting, plaintiff's account indicates that defendant shot plaintiff largely because he was angry with plaintiff for refusing to put on the handcuffs. With regard to plaintiff's allegation that defendant beat him with the baton, however, even plaintiff's facts suggest some basis for the officer to have used, at least initially, some force

against the plaintiff. Because the facts of both the alleged beating and the shooting are interwoven, the Court will not grant qualified immunity to defendant Worley at this time on the beating component of the claim. It will, however, submit a carefully worded interrogatory to the jury to insure that a reviewing court can, if necessary, ascertain the basis upon which the jury finds liability on the part of the defendant.

11. The Court will have to instruct the jury on the law applicable to a Fourteenth Amendment claim and will have to tailor interrogatories sufficiently to insure that, if it finds liability, the jury does so only on a basis that *does not contravene defendant Worley's potential qualified immunity on facts less egregious than those the plaintiff has posited here*. Assuming an appeal of this denial of qualified immunity by defendant, the Court welcomes any illumination by the appellate court as to the appropriate instruction that should be given to the jury. Specifically, is a malicious

Accordingly, Officer Worley is not entitled to summary judgment on the grounds of qualified immunity, and defendants' motion for summary judgment [20] is DENIED as to plaintiff's Section 1983 claim against Officer Worley, asserted in Count One of the Complaint.

### III. *Plaintiff's Section 1983 Claim Against Cobb County*

Plaintiff has also asserted a claim under Section 1983 against Cobb County, alleging that Officer Worley's actions against him were taken pursuant to an official policy or custom of the county.

In *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that municipalities may not be found liable under 42 U.S.C. § 1983 on a theory of respondeat superior. *See also Scala v. City of Winter Park*, 116 F.3d 1396, 1399 (11th Cir.1997). A local government is only liable under Section 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Mandel v. Doe*, 888 F.2d 783, 791 (11th Cir.1989) (citing *Monell*, 436 U.S. at 694, 98 S.Ct. 2018). Thus, liability under Section 1983 may not be based on an employment relationship linking the local government (including counties as well as municipalities) to the offending employee; rather, "[r]ecovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality'—that is, acts which the municipality has officially sanctioned or ordered." *Id.* (citing *Pembaur v. Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)).

Thus, in order to establish that Cobb County is liable for the actions of Officer Worley at issue in this action, plaintiff must present sufficient evidence to establish that the actions were taken pursuant to an official "custom" or "policy" of the Cobb County Police Department. *See Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1479 (11th Cir.1991); *Fundiller v. Cooper City*, 777 F.2d 1436 (11th Cir. 1985).

The United States Supreme Court has set forth a three-part test for determining whether the acts of a public employee subjects the governmental entity to liability: 1) the entity officially sanctioned or ordered the act; 2) the actor was an official with final policymaking authority; or 3) the action was taken pursuant to a policy adopted by officials responsible under state law for making policy in that area. *Pembaur*, 475 U.S. at 480–483, 106 S.Ct. 1292. Plaintiff has failed to present sufficient evidence that Cobb County should be liable under any of these circumstances. He has failed to show that the County officially sanctioned or ordered any of the actions taken by Officer Worley, and he has failed to show that Officer Worley had final policymaking authority for the county. Finally, he has failed to show that Officer Worley's actions were taken pursuant to any policy or custom adopted by officials responsible for making such policy.

To meet his burden of showing that Cobb County had a policy or custom of failing to train its officers adequately in the use of force against arresters, plaintiff must establish a "series of incidents of unconstitutional conduct suggesting the existence of a widespread practice that ... constitutes a custom or usage with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). Although plaintiff ar-

and sadistic intent an element of a Fourteenth Amendment claim?

gues that his treatment at the hands of Officer Worley was pursuant to an official policy or custom of Cobb County, he has failed to produce sufficient evidence that his treatment was part of any "series of incidents of unconstitutional conduct."

Defendants have presented evidence that Cobb County has an extensive training program regarding the use of force, and that Officer Worley had been trained in the appropriate procedures and policies. (*See* SMF at ¶¶ 2–5, 8–10; Worley Aff.) Plaintiff argues that the facts surrounding Officer Worley's beating him with a baton and shooting him reflect that Officer Worley was not adequately trained in the use of appropriate force. Plaintiff also argues in his brief in response to defendants' motion for summary judgment that Cobb County has a policy or custom of failing to properly investigate claims of officer misconduct, because, he argues, the county failed to investigate adequately the incident at issue in this action. (*See* Pl.'s Br.) Plaintiff argues that the CCPD undertook its investigation into his shooting by Officer Worley with the assumption that Worley was the victim and plaintiff the aggressor. Even assuming that plaintiff's characterization of the Internal Affairs investigation is correct, however, the Court concludes that plaintiff has failed to present sufficient evidence that Officer Worley's actions were taken pursuant to an official policy or custom of the CCPD.

At most, plaintiff's evidence reflects that the CCPD did a poor job investigating this particular incident, and that the officers in charge of the investigation failed to interview plaintiff and to consider his version of events. Even if plaintiff's evidence reflected that the CCPD's internal investigation into this matter were a complete sham, however, he has not presented evidence that this was a widespread problem in the CCPD that has culminated in rampant police misconduct. Plaintiff argues that "[c]hanging facts to conceal police abuse is apparently a common practice within the Department," but he cites only one other allegation of misconduct by CCPD officers in support of this allegation.

Plaintiff has presented the "Statement" of John Arthur Smith in support of his allegations against Cobb County. (*See* discussion of Defs.' Mot. to Strike the Stmt. of Smith, *infra.*) Smith, like plaintiff, also alleges that Officer Worley used excessive force on him and that the county failed to discipline Officer Worley as a result of that misconduct. Even taking all of Smith's allegations as true, along with those of plaintiff, the Court nevertheless concludes that plaintiff's evidence is not sufficient to meet the burden of establishing that Officer Worley's alleged misconduct was part of a widespread practice or that it was done pursuant to an official policy or custom of Cobb County. Although plaintiff argues vehemently that the facts surrounding the investigation into his own allegations against Officer Worley reflect that Cobb County did not take his allegations seriously, he has not shown that Cobb County regularly failed to investigate police misconduct or that it tolerated such behavior by police officers on a widespread basis.

Accordingly, because plaintiff has failed to present sufficient evidence to establish that Officer Worley's actions in beating plaintiff with a baton and shooting him twice were taken pursuant to an official policy or custom of Cobb County, defendants' motion for summary judgment [20] is GRANTED with respect to plaintiff's Section 1983 claim against Cobb County.

## IV. *State Law Claims*

In addition to his federal constitutional claims asserted under Section 1983,

plaintiff has also asserted a state law claim against defendant Worley individually for assault and battery. Under Georgia law, a person commits the offense of simple assault when he either "attempts to commit a violent injury to the person of another," or "commits an act which places another in reasonable apprehension of immediately receiving a violent injury." O.C.G.A. § 16–5–20. A person commits a battery when he either "[i]ntentionally makes physical contact of an insulting or provoking nature with the person of another," or "[i]ntentionally causes physical harm to another." O.C.G.A. § 16–5–23; *see also* O.C.G.A. §§ 51–1–13; 51–1–14 (creating private right of action for the tort of assault and battery).

Defendants argue that plaintiff has failed to present sufficient evidence to establish that Officer Worley committed either an assault or battery against him, but again, defendants' entire argument is premised on the acceptance of Officer Worley's version of the facts as true. Defendants argue that Worley was authorized and justified under the law for shooting plaintiff because he reasonably feared for his life, and therefore, that Worley is entitled to qualified immunity for his actions against plaintiff. Under plaintiff's version of the facts, however, as set out in great detail above, Officer Worley unreasonably shot plaintiff twice in the abdomen when he knew that plaintiff was unarmed and presented no threat of immediate harm to Officer Worley.

For all the reasons set forth above, the Court concludes that plaintiff has presented sufficient evidence to establish a genuine issue of material fact over whether Officer Worley committed an assault and battery against him, and that Officer Worley is not entitled to qualified or official immunity on this claim. Accordingly, de-

fendants' motion for summary judgment [20] is DENIED with respect to this claim.

## V. *Defendants' Motion to Strike Statement of John Arthur Smith*

In support of his allegations that Cobb County had a widespread practice of tolerating misconduct by police officers, plaintiff has submitted the "Statement" of John Arthur Smith as additional supporting evidence, along with a videotape that purports to support Smith's allegations. Defendants have filed a motion to strike this Statement and the accompanying videotape [30], pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, on the grounds that the statement does not comply with the requirements of Federal Rule of Civil Procedure 56 and that it contains inadmissible hearsay. Defendants have also objected to the Statement on the grounds that Smith's own Section 1983 action against, *inter alia,* Officer Worley and Cobb County, has been dismissed by the undersigned, pursuant to *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), and therefore, that plaintiff is precluded from using Smith's statement as evidence in this action.

The Court first notes that, although defendants have filed the motion to strike pursuant to Rule 12(f), Rule 12(f) applies only to matters within the pleadings; as the Statement of John Arthur Smith was not submitted in connection with a "pleading," Rule 12(f) does not apply. *See* FED. R. CIV. P. 7(a). The proper method for challenging the admissibility of evidence in an affidavit is to file a notice of objection to the challenged testimony, not a motion to strike. *See, e.g., Morgan v. Sears, Roebuck & Co.,* 700 F.Supp. 1574 (N.D.Ga.1988); *Pinkerton and Laws Co. v. Roadway Express, Inc.,* 650 F.Supp. 1138, 1141 (N.D.Ga.1986); *Friedlander v. Troutman, Sanders, Lockerman & Ashmore,*

595 F.Supp. 1442 (N.D.Ga.1984), *rev'd on other grounds*, 788 F.2d 1500 (11th Cir. 1986); *Smith v. Southeastern Stages, Inc.*, 479 F.Supp. 593 (N.D.Ga.1977).

■ Defendants are correct, however, that the Court may consider only admissible evidence when deciding a summary judgment motion. Thus, the Court will assess the admissibility of evidence presented through affidavits, depositions, or any other method as part of its consideration of the motion. As part of that assessment, the Court will consider any objections to testimony presented in affidavits or any other form of evidence when it rules on the merits of a summary judgment motion.

In any event, although the Statement at issue here does appear to contain some hearsay information that would be inadmissible at trial, the Court has reviewed the Statement and has concluded that none of the purported evidence contained therein assists plaintiff in establishing his Section 1983 claim against Cobb County. Accordingly, defendant's motion to strike statement of John Arthur **Smith [30] is DENIED as moot**.

## VI. *Other Motions*

■ Plaintiff has filed a motion to re-open discovery [29] based on a newspaper report indicating that a Cobb County police officer was under investigation for shooting a fleeing suspect who may or may not have been armed. Plaintiff argues that the incident described in the newspaper report is sufficiently similar to the incident at issue in this action that he should be allowed further discovery to investigate the details. The Court disagrees, and finds that the incident, as described in the newspaper report, is not sufficiently similar to the events at issue in this action to justify re-opening discovery at this late stage in the litigation. Moreover, plaintiff had ample time during the discovery period to collect information regarding the incidence of Cobb County police officers shooting "fleeing, unarmed misdemeanants." The Court concludes that any additional information related to this specific incident described in the newspaper report is not likely to assist plaintiff in defeating Cobb County's motion for summary judgment on plaintiff's Section 1983 claim.

Defendants have also filed a motion to extend the time to file a reply brief [31], and defense counsel Christine Daniel has filed a motion to withdraw as counsel for defendants [42]. Both of these motions are unopposed.

Accordingly, plaintiff's motion to re-open discovery [29] is **DENIED**, defendants' motion to extend the time to file a reply brief [31] is **GRANTED**, and Christine Daniel's motion to withdraw as counsel for defendants [42] is **GRANTED.**

### CONCLUSION

For all the above reasons, defendants' Motion for Summary Judgment [20] is **GRANTED in PART and DENIED IN PART**. Defendants' motion is **GRANTED** with respect to plaintiff's claims under 42 U.S.C. § 1983 against defendant Cobb County. Defendants' motion is **DENIED**, however, with respect to plaintiff's claims under Section 1983 and his state law claim of assault and battery against defendant Worley.

Plaintiff's motion to re-open discovery [29] is **DENIED**, defendant's motion to strike statement of John Arthur Smith [30] is **DENIED**, defendants' motion to extend the time to file a reply brief [31] is **GRANTED**, and Christine Daniel's motion to withdraw as counsel for defendants [42] is **GRANTED.**